Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

_____Miami_____ Division

FILED BY _____ D.C.

MAR 10 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

|  |  |  |
|---|---|---|
| Steven F. Helfand | ) | Case No.   1:20-cv-20113-KMW |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| –v– | ) | |
| Esslinger Wooten Maxwell, Inc.; Marcelo | ) | |
| Steinmander; Edward Peloso and EJP 888 Biscayne | ) | |
| Blvd. 2712, LLC. | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## AMENDED COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Steven F. Helfand |
| Street Address | 1400 SW 137th Avenue, F112 |
| City and County | Pembroke Pines, Broward County |
| State and Zip Code | Florida |
| Telephone Number | 954.447.3315 |
| E-mail Address | 1400steven.helfand@gmail.com |

#### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

| | |
|---|---|
| Name | Steinmander and EWM |
| Job or Title *(if known)* | c/o Aniela Gonzalez, Esq. |
| Street Address | 201 Alhambra Circle, #1060 |
| City and County | Coral Gables, Miami-Dade |
| State and Zip Code | Florida, 33134 |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 2**

| | |
|---|---|
| Name | Edward Peloso & EJP 888 Biscayne Blvd. 2712, LLC |
| Job or Title *(if known)* | c/o Alberto Cardet, Esq. |
| Street Address | 1330 Coral War, Suite 301 |
| City and County | Miami, Miami-Dade |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 3**

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 4**

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

FHA, 42 USC 3601, et seq.

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

   a.   If the plaintiff is an individual

   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____ .

   b.   If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____ ,

   and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

   a.   If the defendant is an individual

   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant, *(name)* _____, is incorporated under

        the laws of the State of *(name)* _____, and has its

        principal place of business in the State of *(name)* _____.

        Or is incorporated under the laws of *(foreign nation)* _____,

        and has its principal place of business in *(name)* _____.

    *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

   3.    The Amount in Controversy

      The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  Peloso and EJP owns or controls countless rental properties (more than 3).  Peloso and EJP are sophisticated property owners represented by sophisticated attorneys and property managers (Steinmander & EWM).  Steinmander & EWM, in addition to serving as property managers at all times, were/are Peloso's and EJP's agents.  Peloso, Steinmander, EJP & EWM discriminated against Plaintiff due to his sexual orientation and HIV status.  Please see the attachment which contains the pertinent factual allegations and represents and short, plain and concise statement of what this case is about.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Monetary damages in an amount according to proof, but no less than $300,000.00.  Additionally, Plaintiff demands all costs and damages made available pursuant to the FHA.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.        Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            March 9, 2020

Signature of Plaintiff
Printed Name of Plaintiff        Steven F. Helfand

### B.        For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

Print          Save As...          Add Attachment                    Reset

**FIRST CAUSE OF ACTION**
**FAIR HOUSING ACT VIOLATIONS**
**AGAINST ALL DEFENDANTS**

1.  A true and correct copy of the rental agreement is attached as Exhibit A to this Complaint.  This claim stems from the unlawful disposal of Plaintiff's property by his landlord and other tortfeasors in violation of FS 715.104 and the lease.  The breach occurred because of Plaintiff's sexual orientation and his HIV Positive status.  But, for sexual orientation and HIV Positive status of Plaintiff; Defendants would not have violated the Fair Housing Act.

2.  As a result of the above incident, Plaintiff has otherwise performed all conditions precedent under the lease.  Plaintiff did all or substantially all of the essential things which the contract required him to do or he was excused from doing those things.

3.  All conditions required by the contract for Defendant's performance had occurred.

4.  Defendants failed to do something essential which the contract required it to do.  Defendants did something which the contract prohibited it from doing and the prohibition was essential to the contract.

5.  After execution of a writ of possession on November 1, 2019; the Defendant, EJP 888 Biscayne Blvd 2712, LLC. [hereafter "EJP"], with the assistance, cooperation and aiding and abetting, of all other named parties, unlawfully disposed of Plaintiff's property.  Earlier, Defendant, EJP, warned that it would retaliate against Plaintiff after it had inquired as to Plaintiff's sexual orientation.  EJP, in June, 2019, through co-Defendant, Edward Peloso, contacted Plaintiff, and specifically demanded to know

Plaintiff's sexual orientation.  There is and could be no legitimate basis for such an inquiry.

6.  Mr. Peloso then suggested he had obtained visitor logs from the condominium security desk; indicating late night visitors, who happened to be male.  Because of the ostensible gender of the visitors, Mr. Peloso indicated that Plaintiff was "debasing" his property and demanded that Plaintiff leave; because of the implicit suggestion Plaintiff was "gay."  In response to profanity-laced rant by Mr. Peloso, Plaintiff stated, "Yes, I'm gay and I'm HIV positive also.  What does this have to do with the lease?  I paid a year in advance!"

7.  At or about that time; Marcello Steinmander surfaced, on behalf of co-Defendant Esslinger Wooten Maxwell, Inc.; indicating he now worked for Mr. Peloso and EJP  [in addition to "EWM"], and confirmed they would be the property managers for the unit moving forward.  See Exhibit B, [**signed by Steinmander, indicating he is the property manager for the unit**].  Steinmander entered the unit under the artifice that the unit was to be offered for sale and/or rent and needed improvements; and demanded immediate access.  In reality, Steinmander was secretly conducting a non-disclosed, property inspection, so as to trigger an eviction.

8.  Plaintiff obliged entry as he did not know the pre-textual basis of Steinmander's visit, and then Steinmander and EWM conducted the aforementioned inspection ostensibly under false premises.  In fact, Steinmander was looking for any basis to evict Plaintiff early, because Plaintiff had pre-paid his rent for the year.  Steinmander ignored all of Plaintiff's concerns about the unit, and repairs that were

needed for safety, including the electrical system and the unit's habitability, and demanded that Plaintiff "move out immediately," in spite of the pre-paid rent.

9.   The reason articulated by Steinmander was that Peloso and EJP 888 Biscayne Blvd., 2712, LLC, did "not want him any more."  Plaintiff, at least according to Steinmander, "had bad karma because he was gay.  We don't need you here!" Steinmander asserted, oddly, "You are devaluing our unit!"  Plaintiff immediately sought to have Steinmander banned from the building and also demanded proof he worked for EWM and had liability insurance should any further entries be made.  Prior to leaving, Steinmander also indicated that Plaintiff needed to sign over all his "rights" to the unit, along with his furnishings and art, which made no sense to Plaintiff.  Steinmander also specifically threatened, just before being asked to conclude his visit, that Plaintiff would be monitored "going forward."  After this warning, according to information and belief, Steinmander, EJP, EWM & Peloso orchestrated a series of intrusions into the unit so as to destabilize Plaintiff.  On information and belief; Peloso and/or Steinmander contacted FP&L to disable the power to the unit after the bill had already been paid by Plaintiff; and to cut-off/terminate services.  The same happened with Comcast and internet.  It became clear EJP, Steinmander, Peloso and EWM were orchestrating a campaign of harassment against Plaintiff.  Peloso, EJP, EWM also, with the assistance of Steinmander, orchestrated a series of inappropriate service interruptions for the unit so as to drive Plaintiff out and cause fear; with the facilitation of certain unknown third-parties.

10.   Finally, after destabilizing Plaintiff sufficiently to the extent that Plaintiff was so intimidated to not leave the unit to even go food shopping; because of reasonable

fear, a sham eviction was orchestrated.  It was not contested because Plaintiff already planned on moving out because of the thug-like tactics confronted and was afraid to leave the unit.  Plaintiff had contacted his insurance company and police about the harassment; but they did not provide any assistance.  The eviction was brought one month prior to the lease ending date, in spite of the fact no money was owed for rent and in spite of Plaintiff's fragile medical status.  Plaintiff defaulted on the eviction and ultimately was detained after being thrown into a psychotic episode instigated by the very tactics herein complained about and alleged to have occurred; combined with other medical factors, which had been previously raised with Plaintiff's insurance company.[1]

11.  Plaintiff did not contest the eviction and a writ of possession was obtained on or about November 1, 2019.  Steinmander, EWM, Peloso and EJP then took possession on November 1, 2019 of the unit.  Upon entry, Steinmander, EWM, Peloso and EJP found Plaintiff's HIV empty medicine bottles, confirming the earlier disclosure by Plaintiff during the heated exchange instituted by Mr. Peloso, which were on a kitchen counter, in plain view.  Rather than comply with the requirements of both the lease and FS 715.104, EJP, Steinmander, Peloso, and EWM disposed of all property unlawfully, solely because of Plaintiff's HIV positive status, and their unlawful belief everything was

---

[1] In or about July 2020, Plaintiff's medicine was stolen.  He had an eight month supply. Plaintiff's insurance company, ultimately paid a portion of Plaintiff's claim seven months later.  This caused Plaintiff's medical condition to exacerbate.  PlaintiffHIV viral load compounded from undetectable to about 225,000 copies causing him cognitive disorientation.  Plaintiff was for twenty years, a member in good standing of the California Bar, although he is now inactive.  In December 1999, Plaintiff graduated summa cum laude from the University of Miami, School of Law.  Plaintiff is currently receiving medical care through Ryan White and other assistance.  With his treatment restored, testing conducted as of March 2, 2020, has confirmed Plaintiff is again undetectable.  Plaintiff is no longer suffering cognitive disorientation; but in the meantime is also receiving counseling and psychiatric care to militate against a repeat occurrence of cognitive disorientation.

"contaminated." The relevant Florida statute, F.S. 715.104, and lease required that the property be inventoried and stored; and only after proper notice, disposed. EJP, Steinmander, Peloso, and EWM, each collaborated, and aided and abetted each other, then placed all property, consisting of fine arts, including authentic lithographs by Jules Cheret from Chaix, France, fine antiques, and all personal possessions, in the "public way"; when this was not permissible, and in fact, precluded by Florida Statute 715.104 and the lease. The property was worth over $300,000.00. **All of it was lost, in spite of repeat inquiries to Peloso, EJP [and their counsel, Alberto Cardet], EWM and Steinmander, before the disposal date of November 6, 2020. Steinmander, EWM, Peloso and EJP refused to communicate. Mr. Cardet did not return a single voicemail message or email either. Both Peloso and Steinmander hung up on Plaintiff when he asked for the location of his property.** The property was disposed with no notice or warning to Plaintiff in non-compliance of applicable state law and the Fair Housing Act; simply because of Plaintiff's HIV positive status and his sexual orientation, in violation of the FHA, and governing terms and conditions and the rental.

12. There were plenty of other options that did not include disposal, including phone numbers for Plaintiff's parents so as to collect any property that was sought to be disposed. Defendant, EJP, and conspiring with co-Defendant, EWM, Peloso and Steinmander, also retained advance rent not appropriately withheld post execution of the eviction and has failed and refused to properly account for Plaintiff's security deposit or property. All of this was due to discriminatory animus based on sexual orientation and HIV positive status.

## DAMAGES

13.  Plaintiff demands all damages and costs for which he is lawfully entitled to

receive pursuant to the Fair Housing Act.

March 9th, 2020

/S/ *Steven F. Helfand*
**Plaintiff**

STEVEN F. HELFAND
1400 SW 137TH AVENUE, F 112
PEMBROKE PINES, FL 33027
786.676.1018
1400STEVEN.HELFAND@GMAIL.COM

# Exhibit A



**Nonlawyer Disclosure**

**Instructions to Licensee:** Before you begin to complete the next form, you must give this nonlawyer disclosure to the landlord or tenant for whom you are filling in the blanks. (If you are filling in the blanks for both landlord and tenant, complete two nonlawyer disclosures and give one to each.)

1. Insert your name in the first 5 blank "Name" spaces and sign below.

2. Have the landlord or tenant whom you are assisting complete the provision regarding her/his ability to read English, and have her/him sign below.

3. Give this completed disclosure to the landlord or tenant, as appropriate. Keep a copy of this completed disclosure and all forms you give to the landlord or tenant in your files for at least 6 years.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_PIER PAOLO VISCONTI_ told me that he/she is a nonlawyer and may not give legal
    (Name)
advice, cannot tell me what my rights or remedies are, cannot tell me how to testify in court, and cannot represent me in court.

Rule 10-2.1(b) of the Rules Regulating The Florida Bar defines a paralegal as a person who works under the supervision of a member of The Florida Bar and who performs specifically delegated substantive legal work for which a member of The Florida Bar is responsible. Only persons who meet the definition may call themselves paralegals. _PIER PAOLO VISCONTI_ informed me that he/she is not a paralegal as defined by the
                       (Name)
rule and cannot call himself/herself a paralegal.

_PIER PAOLO VISCONTI_ told me that he/she may only type the factual information
    (Name)
provided by me in writing into the blanks on the form. Except for typing, _PIER PAOLO VISCONTI_
                                                                      (Name)
may not tell me what to put in the form and may not complete the form for me. However, if using a form approved by the Supreme Court of Florida, _PIER PAOLO VISCONTI_ may ask me factual questions to fill in
                                          (Name)
the blanks on the form and may also tell me how to file the form.

**Landlord or Tenant:**

✗ ___21___  I can read English.

_____  I cannot read English but this notice was read to me by _____
                                                                              (Name)
in _____ which I understand.
          (Language)

✗ _E.JP 888 Bisayne Blv7 2H2 44'_
    Landlord or Tenant signature

_Edward Pelon_
Landlord or Tenant signature

Licensee signature

ND-2  Rev 7/13
Serial# 084816-300181-1234417

©2013 Florida Realtors®

*Pkg Space #11-38 (Tandem; Double Car Space*

**RESIDENTIAL LEASE FOR APARTMENT OR UNIT IN MULTI-FAMILY RENTAL HOUSING (OTHER THAN A DUPLEX) INCLUDING A MOBILE HOME, CONDOMINIUM, OR COOPERATIVE (FOR A TERM NOT TO EXCEED ONE YEAR)**

 Douglas Elliman REAL ESTATE

(Not To Be Used For Commercial, Agricultural, or Other Residential Property)

WARNING: IT IS VERY IMPORTANT TO READ ALL OF THE LEASE CAREFULLY. THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS

AN ASTERISK (*) OR A BLANK SPACE (_____) INDICATES A PROVISION WHERE A CHOICE OR A DECISION MUST BE MADE BY THE PARTIES

NO CHANGES OR ADDITIONS TO THIS FORM MAY BE MADE UNLESS A LAWYER IS CONSULTED.

I. TERMS AND PARTIES. This is a lease (the "Lease") for a period of **12** months (the "Lease Term"), beginning **DECEMBER 1st 2018** and ending **NOVEMBER 30th 2019**, between **EJP 888 BISCAYNE BLVD 2712 LLC** and **WALTER FRED ELLINGWOOD III & HELFAND STEVEN FRANKLIN**

(In the Lease, the owner, whether one or more, of the property is called "Landlord." All persons to whom the property is leased are called "Tenant.")

Landlord's E-mail Address: _____
Landlord's Telephone Number: _____
Tenant's E-mail Address: _____
Tenant's Telephone Number: _____

II. PROPERTY RENTED. Landlord leases to Tenant apartment or unit no. **2712** in the building located at **888 BISCAYNE BLVD** known as **MARINA BLUE** (name of apartment or condominium) **MIAMI** (city) Florida **33132** (zip code), together with the following furniture and appliances. **CEILINGS LAMP - 60' TV - WINDOW TREATMENTS - KITCHEN APPLIANCES - WASHER AND DRYER**

[List all furniture and appliances. If none, write "none."] (In the Lease, the property leased, including furniture and appliances, if any, is called "the Premises.")

III. COMMON AREAS. Landlord grants to Tenant permission to use, during the Lease Term, along with others, the common areas of the building and the development of which the Premises are a part

IV. RENT PAYMENTS AND CHARGES. Tenant shall pay rent for the Premises in installments of **FULL 36,000** each on the _____ day of each _____ (month, week) **UPON SIGNING THE LEASE** (a "Rental Installment Period," as used in the Lease, shall be a month if rent is paid monthly, and a week if rent is paid weekly.) Tenant shall pay with each rent payment all taxes imposed on the rent by taxing authorities. The amount of taxes payable on the beginning date of the Lease is $ **0.°** for each installment. The amount of each installment of rent plus taxes ("the Lease Payment"), as of the date the Lease begins, is $ **36,000**. Landlord will notify Tenant if the amount of the tax changes. Tenant shall pay the rent and all other charges required to be paid under the Lease by cash, valid check, or money order. Landlord may appoint an agent to collect the Lease Payment and to perform Landlord's obligations.

Landlord _____ and Tenant _____ acknowledge receipt of a copy of this page, which is Page 1 of 16.

RLAUCC-7x   Rev 7/16   Approved on April 15 2010, by the Supreme Court of Florida for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

Unless this box ☐ is checked, the Lease Payments must be paid in advance beginning **DECEMBER 1st 2018**
(date)

If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from

_____ through _____ in the amount of $_____ and shall be due
(date)                                        (date)

on _____. (If rent paid monthly, prorate on a 30-day month.)
(date)

**V. DEPOSITS, ADVANCE RENT, AND LATE CHARGES.** In addition to the Lease Payments described above, Tenant shall pay the following: (check only those items that apply)

☑   a security deposit of $ **3,000** to be paid upon signing the Lease.

☑   advance rent in the amount of $ **36,000** for the Rental Installment Periods of **12 MONTHS** to be paid upon signing the Lease

☐   a pet deposit in the amount of $_____ to be paid upon signing the Lease.

☐   a late charge in the amount of $_____ for each Lease Payment made more than _____ days after the date it is due

☐   a bad check fee in the amount $_____ (not to exceed $20.00 or 5% of the Lease Payment, whichever is greater) if Tenant makes any Lease Payment with a bad check. If Tenant makes any Lease Payment with a bad check, Landlord can require Tenant to pay all future Lease Payments in cash or by money order.

☐   Other:_____

☐   Other:_____

**VI. SECURITY DEPOSITS AND ADVANCE RENT.** If Tenant has paid a security deposit or advance rent the following provisions apply

A.   Landlord shall hold the money in a separate interest-bearing or non-interest-bearing account in a Florida banking institution for the benefit of Tenant. If Landlord deposits the money in an interest-bearing account, Landlord must pay Tenant interest of at least 75% of the annualized average interest paid by the bank or 5% per year simple interest, whichever Landlord chooses. Landlord cannot mix such money with any other funds of Landlord or pledge, mortgage, or make any other use of such money until the money is actually due to Landlord; or

B.   Landlord must post a surety bond in the manner allowed by law. If Landlord posts the bond, Landlord shall pay Tenant 5% interest per year

At the end of the Lease, Landlord will pay Tenant, or credit against rent, the interest due to Tenant. No interest will be due Tenant if Tenant wrongfully terminates the Lease before the end of the Lease Term

C.   If Landlord rents 5 or more dwelling units, then within 30 days of Tenant's payment of the advance rent or any security deposit, Landlord must notify Tenant in writing of the manner in which Landlord is holding such money, the interest rate, if any, that Tenant will receive, and when such payments will be made.

**VII. NOTICES.** **PIER PAOLO VISCONTI** is Landlord's Agent. All notices to Landlord and all
(name)

Lease Payments must be sent to Landlord's Agent at_____
(address)

unless Landlord gives Tenant written notice of a change. Landlord's Agent may perform inspections on behalf of Landlord, subject to Article XII below. All notices to Landlord shall be given by certified mail, return receipt requested, or by hand delivery to Landlord or Landlord's Agent

Any notice to Tenant shall be given by certified mail, return receipt requested, or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at the Premises.

**VIII. USE OF PREMISES.** Tenant shall use the Premises only for residential purposes. Tenant also shall obey, and require anyone on the Premises to obey, all laws and any restrictions that apply to the Premises. Landlord will give Tenant notice of any restrictions that apply to the Premises

If the Premises are located in a condominium or cooperative development, the Lease and Tenant's rights under it, including as to the common areas, are subject to all terms of the governing documents for the project, including, without limitation, any Declaration of Condominium or proprietary lease, and any restrictions, rules, and regulations now existing or hereafter adopted, amended, or repealed

Landlord _____ ( ☐ ) and Tenant _____ ( ☐ ) acknowledge receipt of a copy of this page, which is Page 2 of 16.

RLAUCC-1x   Rev 7/15   Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10.2.1(a) of the Rules Regulating the Florida Bar
Serial# 058918-300181-1284417

Unless this box ☐ is checked, Landlord may adopt, modify, or repeal rules and regulations for the use of common areas and conduct on the Premises during the Lease Term. All rules and regulations must be reasonable and in the best interest of the development in which the Premises are located.

Occasional overnight guests are permitted. An occasional overnight guest is one who does not stay more than **7** nights in any calendar month (if left blank, 7). Landlord's written approval is required to allow anyone else to occupy the Premises.

Unless this box ☐ is checked or a pet deposit has been paid, Tenant may not keep or allow pets or animals on the Premises without Landlord's approval of the pet or animal in writing.

Unless this box ☐ is checked, no smoking is permitted in the Premises.

Tenant shall not keep any dangerous or flammable items that might increase the danger of fire or damage on the Premises without Landlord's consent.

Tenant shall not create any environmental hazards on or about the Premises.

Tenant shall not destroy, deface, damage, impair, or remove any part of the Premises belonging to Landlord, nor permit any person to do so.

Tenant may not make any alterations or improvements to the Premises without first obtaining Landlord's written consent to the alteration or improvement. However, unless this box ☐ is checked, Tenant may hang pictures and install window treatments in the Premises without Landlord's consent, provided Tenant removes all such items before the end of the Lease Term and repairs all damage resulting from the removal.

Tenant must act, and require all other persons on the Premises to act, in a manner that does not unreasonably disturb any neighbors or constitute a breach of the peace.

**IX. MAINTENANCE.** Landlord and Tenant agree that the maintenance of the Premises must be performed by the person indicated below.

    **A.** Landlord's Required Maintenance. Landlord will comply with applicable building, housing, and health codes relating to the Premises. If there are no applicable building, housing, or health codes, Landlord shall maintain and repair the roofs, porches, windows, exterior walls, screens, foundations, floors, structural components, and steps, and keep the plumbing in reasonable working order. If the Premises are located in a condominium, Landlord and Tenant acknowledge that the maintenance of the structural elements and common areas is performed by the condominium association as part of the common area maintenance. Landlord shall assure that the association complies with applicable building, housing, and health codes relating to the Premises. If there are no applicable building, housing, or health codes, Landlord shall assure that the association maintains and repairs roofs, porches, windows, exterior walls, screens, foundations, floors, structural components, and steps, and keeps the plumbing in reasonable working order. Landlord will be responsible for the maintenance of any items listed above for which the association is not responsible.

    **B.** Elective Maintenance. Fill in each blank space in this section with Landlord or Tenant to show who will take care of the item noted. If a space is left blank, Landlord will be required to take care of that item (or assure that the association takes care of the items if the Premises are located in a condominium).

| | | Item |
|---|---|---|
| ☑ Landlord | ☐ Tenant | Smoke Detectors |
| ☑ Landlord | ☐ Tenant | Extermination of rats, mice, roaches, ants, wood-destroying organisms, and bedbugs |
| ☑ Landlord | ☐ Tenant | Locks and keys |
| ☑ Landlord | ☐ Tenant | Clean and safe condition of outside areas |
| ☑ Landlord | ☐ Tenant | Garbage removal and outside garbage receptacles |
| ☑ Landlord | ☐ Tenant | Running water |
| ☐ Landlord | ☑ Tenant | Hot water |
| ☐ Landlord | ☐ Tenant | Lawn |
| ☑ Landlord | ☐ Tenant | Heat |
| ☑ Landlord | ☐ Tenant | Air conditioning |
| ☐ Landlord | ☑ Tenant | Furniture |
| ☑ Landlord | ☐ Tenant | Appliances |
| ☐ Landlord | ☑ Tenant | Fixtures |
| ☑ Landlord | ☐ Tenant | Pool (including filters, machinery, and equipment) |
| ☐ Landlord | ☑ Tenant | Heating and air conditioning filters |
| ☐ Landlord | ☐ Tenant | Other A/C FILTERS TO BE CHANGED ONCE AT MONTH AT TENANTS EXPENSE |

Tenant's responsibility, if any, indicated above, shall not include major maintenance or major replacement of equipment.

Landlord shall be responsible for major maintenance or major replacement of equipment, except for equipment for which Tenant has accepted responsibility for major maintenance or major replacement in the previous paragraph.
Major maintenance or major replacement means a repair or replacement that costs more than $ **150%**

Landlord _____ and Tenant _____ acknowledge receipt of a copy of this page, which is Page 3 of 18.

RLAUCC 1x   Rev 7/16   Approved on April 15, 2010 by the Supreme Court of Florida for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar
Serial# 066616-860181-1284417

Tenant shall be required to vacate the Premises on 7 days' written notice, if necessary, for extermination pursuant to this subparagraph. When vacation of the Premises is required for extermination, Landlord shall not be liable for damages but shall abate the rent.

Nothing in this section makes Landlord responsible for any condition created or caused by the negligent or wrongful act or omission of Tenant, any member of Tenant's family, or any other person on the Premises with Tenant's consent.

    C    Tenant's Required Maintenance. At all times during the Lease Term, Tenant shall:

        1. comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes;

        2. keep the Premises clean and sanitary;

        3. remove all garbage from the dwelling unit in a clean and sanitary manner;

        4. keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and

        5. use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators.

**X. UTILITIES.** Tenant shall pay all charges for hook-up, connection, and deposit for providing all utilities and utility services to the Premises during the Lease Term except ___WATER SEWER___, which Landlord agrees to provide at Landlord's expense. (Specify any utilities to be provided and paid for by Landlord such as water, sewer, oil, gas, electricity, telephone, garbage removal, etc.).

**XI. SERVICEMEMBER.** If Tenant is a member of the United States Armed Forces on active duty or state active duty or a member of the Florida National Guard or United States Reserve Forces, the Tenant has rights to terminate the Lease as provided in Section 83.682, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

**XII. LANDLORD'S ACCESS TO PREMISES.** Landlord or Landlord's Agent may enter the Premises in the following circumstances:

    A.  At any time for the protection or preservation of the Premises.

    B.  After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.

    C.  To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:

        1  with Tenant's consent;

        2. in case of emergency;

        3  when Tenant unreasonably withholds consent; or

        4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment Period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant's consent or for the protection or preservation of the Premises.)

**XIII. PROHIBITED ACTS BY LANDLORD.** Landlord is prohibited from taking certain actions as described in Section 83.67, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

**XIV. CASUALTY DAMAGE.** If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant's consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the Premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant's liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.

**XV. DEFAULTS/REMEDIES.** Should a party to the Lease fail to fulfill their responsibilities under the Lease or need to determine whether there has been a default of the Lease, refer to Part II, Chapter 83, entitled Florida Residential Landlord and Tenant Act which contains information on defaults and remedies. A copy of the current version of this Act is attached to the Lease.

**XVI. ASSIGNMENT AND SUBLEASING.** Unless this box ☐ is checked, Tenant may not assign the Lease or sublease all or any part of the Premises without first obtaining Landlord's written approval and consent to the assignment or sublease.

**XVII. RISK OF LOSS.** Subject to the next sentence, Landlord shall not be liable for any loss by reason of damage, theft, or otherwise to the contents, belongings, and personal effects of the Tenant, or Tenant's family, agents, employees, guests, or visitors. Landlord shall not be liable if such damage, theft, or loss is caused by Tenant, Tenant's family, agents, employees, guests, or visitors. Nothing contained in this provision shall relieve Landlord or Tenant from responsibility for loss, damage, or injury caused by its own negligence or willful conduct.

**XVIII. SUBORDINATION.** The Lease is automatically subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.

**XIX. LIENS.** The interest of the Landlord shall not be subject to liens for improvements by the Tenant as provided in Section 713.10, Florida Statutes. Tenant shall notify all parties performing work on the Premises at Tenant's request that the Lease does not allow any liens to attach to Landlord's interest.

Landlord _____ (_____) and Tenant _____ (_____) acknowledge receipt of a copy of this page, which is Page 4 of 16.

**XX. APPROVAL CONTINGENCY.** If applicable, the Lease is conditioned upon approval of Tenant by the association that governs the Premises. Any application fee required by an association shall be paid by ☐ Landlord ☒ Tenant. If such approval is not obtained prior to commencement of Lease Term, either party may terminate the Lease by written notice to the other given at any time prior to approval by the association, and if the Lease is terminated, Tenant shall receive return of deposits specified in Article V, if made. If the Lease is not terminated, rent shall abate until the approval is obtained from the association. Tenant agrees to use due diligence in applying for association approval and to comply with the requirements for obtaining approval. ☐ Landlord ☒ Tenant shall pay the security deposit required by the association, if applicable

**XXI. RENEWAL/EXTENSION.** The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but in no event may the total Lease Term exceed one year. A new lease is required for each year.

**XXII. LEAD-BASED PAINT.** ☐ Check and complete if the dwelling was built before January 1, 1978. Lead Warning Statement (when used in this article, the term Lessor refers to Landlord and the term Lessee refers to Tenant)

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure (initial)**

_____(a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below).

     **(i)** ☐___ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain)

_____

_____

     **(ii)** ☐___ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____(b) Records and reports available to the Lessor (check (i) or (ii) below):

     **(i)** ☐___ Lessor has provided the Lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below)

_____

_____

     **(ii)** ☐___ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**

_____(c) Lessee has received copies of all information listed above.

_____(d) Lessee has received the pamphlet *Protect Your Family From Lead in Your Home*.

**Agent's Acknowledgment (initial)**

_____(e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_____   _____   _____   _____
Lessor's signature             Date           Lessor's signature            Date

_____   _____   _____   _____
Lessee's signature             Date           Lessee's signature            Date

_____   _____   _____   _____
Agent's signature              Date           Agent's signature            Date

Landlord [____] and Tenant [____] acknowledge receipt of a copy of this page, which is Page 5 of 18.

RLAUCC 1x   Rev 7/16   Approved on April 15, 2010 by the Supreme Court of Florida for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

Serial# 004010-500141-1364417

**XXIII. ATTORNEYS' FEES.** In any lawsuit brought to enforce the Lease or under applicable law, the party in whose favor a judgment or decree has been rendered may recover its reasonable court costs, including attorneys' fees, from the non-prevailing party.

**XXIV. MISCELLANEOUS.**
A. Time is of the essence of the performance of each party's obligations under the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises is located.
G. Landlord and Tenant will use good faith in performing their obligations under the Lease.
H. As required by law, Landlord makes the following disclosure: "RADON GAS." Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**XXV. TENANT'S PERSONAL PROPERTY.** TENANT MUST INITIAL IN THIS BOX [____] FOR THE FOLLOWING PROVISION TO APPLY. BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

The Lease has been executed by the parties on the dates indicated below.

Landlord's Signature _____ *Edward Peloso*    Date _____ 11/6/18
Landlord's Signature _____    Date _____ 11/6/18
Tenant's Signature _____    Date _____ 11/6/18
Tenant's Signature _____

This form was completed with the assistance of:
Name of Individual: PIETI PAOLO VISCONTI
Name of Business: DOUGLAS ELLIMAN
Address: _____
Telephone Number: _____

Copy of Current Version of Florida Residential Landlord and Tenant Act, Part II, Chapter 83, Florida Statutes to Be Attached

Landlord [____] and Tenant [____] acknowledge receipt of a copy of this page, which is Page 6 of 18.

RLAUCC-1x    Rev 7/16    Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

**Early Termination Fee/Liquidated Damages Addendum**

[ ✓ ]   I agree, as provided in the rental agreement, to pay $ **3,000** (an amount that does not exceed two months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

[ ☐ ]   I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law

X _Edward Pelow_____    X _11/6/18_____
Landlord's Signature                      Date

Landlord's Signature                      Date

_____         _11/6/18_____
Tenant's Signature                       Date

_____         _11/6/18_____
Tenant's Signature                       Date

AS A SUBSTANTIAL OBLIGATION OF THIS LEASE, TENANTS SHALL
GIVE LANDLORD A MINIMUM OF 60 (SIXTY) DAYS WRITTEN NOTICE
PRIOR TO THE EXPIRATION OF THIS LEASE, OF ITS INTENTION
TO VACATE THE PREMISES OR TO ENTER INTO A NEW LEASE.
FAILURE TO DO SO SHALL RESULT IN ANY SECURITY BEING
HELD BY LANDLORD, TO VEST IMMEDIATELY TO LANDLORD.

Landlord (___) (___) and Tenant (___) acknowledge receipt of a copy of this page, which is Page 7 of 18.

RLAUCC-1a    Rev 7/16   Approved on April 15, 2016, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

# Exhibit B

SEVEN (7) DAY NOTICE TO VACATE APARTMENT

NOTICE OF TERMINATION OF LEASE
(WITH NO OPPORTUNITY TO CURE)

To Steven F. Helfand, Walter F. Ellinwood

888 Biscayne Blvd #2712 Miami, FL 33132

You are hereby notified that your Lease Agreement for 888 Biscayne Blvd #2712 Miami, FL 33132 is TERMINATED EFFECTIVE IMMEDIATELY.

This action is taken because:
You have continued to violate your lease agreement, Page 3 paragraph VIII , (see attached copy of lease agreement) and Florida Statute 83.52 Specifically misuse of the landlord's and property by intentional act or a unreasonable disturbance as to the enclose report dated September 24, 2019 regarding the computer theft,  in addition  on July 13, 2019 hot wire motorcycle enclose violation notice on September 23, 2019 police was also dispatch to your unit  additional incident report and unauthorize electrical repairs to electrical panel and plugs enclose are pictures of September 16, 2019
DEMAND IS HEREBY MADE THAT YOU VACATE APARTMENT ON OCTOBER 9, 2019 OR BEFORE SEVEN (7) DAYS FROM THE DELIVERY OF THIS NOTICE.

I have been instructed to file suit immediately after this seven-day period if you do not vacate as demanded.
This notice does not waive any other claims your landlord may have against you.

GOVERN YOURSELF ACCORDINGLY.

This instrument prepared by: Law Offices of Alberto M. Cardet P.A

Property Manager: Marcelo Steinmander,
EJP 888 BISCAYNE BLVD 2712 LLC
1330 Coral Way Suite 301 Miami Fl 33145


I hereby certify that a copy of the notice has been furnished by the above-named tenant(s) on

September 30, 2019
(Date this Termination 7- day notice served upon tenant)

- o   Personal delivery
- o   Posting in a conspicuous place on the premises as tenant was absent from the above named residence.

Signed by person delivering/posting

Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018. All rights reserved.

FLAT RATE
POSTAGE REQUIRED

*PRESS FIRMLY TO SEAL*

*FIRMLY TO SEAL*

**UNITED STATES POSTAL SERVICE®**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

# PRIORITY
## ★ MAIL ★

FROM:

FROM:

STEVEN F. HALFAND
1400 SW 137 th AVE
APT. F 112
PEMBROKE PINES., FL 33027

TO:

UNITED STATES DISTRICT COURT
FILING CLERK - CIVIL CASES
299 E. BROWARD BLVD, #108
FORT LAUDERDALE, FL 33301

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

---

**UNITED STATES POSTAL SERVICE®**

PRIORITY
MAIL

*Retail*

**US POSTAGE PAID**

**$7.75**

Origin: 33027
03/09/20
1139950301-10

PRIORITY MAIL 1-DAY®

0 Lb 4.90 Oz

1005

C019

EXPECTED DELIVERY DAY: 03/10/20

SHIP
TO:
299 E BROWARD BLVD
STE 108
FORT LAUDERDALE FL 33301-1922

**USPS TRACKING® NUMBER**

9505 5127 4561 0069 4631 27

EP14F Oct 2018
OD:12 1/2 x 9 1/2

USPS.COM/PICKUP

*For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.*