UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-cv-20113-KMW



FILED BY _____ D.C.

SEP 16 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

STEVEN F. HELFAND,

     Plaintiff,

vs.

ESSLINGER WOOTEN MAXWELL INC. d/b/a BERKSHIRE HATHAWAY
HOMESERVICES EWM REALTY; EDWARD PELOSO; EJP 888 BISCAYNE BLVD 2712,
LLC; and MARCELO STEINMANDER,

     Defendants.

### ***OPPOSED*** **MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff, in *pro se*, STEVEN F. HELFAND,[1] [hereafter "HELFAND"] respectfully

submits this *Motion for Leave to file a Second Amended Complaint* [hereafter "SAC."]  The

proposed *SAC* is attached hereto at **Exhibit A**.

Defendants, ESSLINGER WOOTEN MAXWELL INC. d/b/a BERKSHIRE

HATHAWAY HOMESERVICES EWM REALTY ["EWM"], MARCELO STEINMANDER

[hereafter "STEINMANDER"], EJP 888 BISCAYNE BLVD. 2712, LLC. hereafter "EJP."] and

EDWARD PELOSO [hereafter "PELOSO"], have met and conferred with HELFAND and

*oppose* this *Motion*.

---

[1] Helfand is not an ordinary, *pro se*, litigant, having graduated from the *University of Miami, School of Law* in December 1999.  Plaintiff was admitted to the *State Bar of California* for nearly twenty years.  While no longer eligible to practice and disabled, Plaintiff discloses this up-front to the Court because lessened pleading standards for *pro se* litigants generally, are plainly inapplicable here.

Rule 15 provides that "*a party may amend its pleading [with] the court's leave*" and that "*[t]he court should freely give leave when justice so requires.*" Fed. R. Civ. P. 15(a)(2).

**HELFAND moves to file the *SAC* within the time permitted by the Court in the *Amended Scheduling Order*.**  [Dkt. 71].   The deadline to file any amendments pursuant to the *Amended Scheduling Order* is October 1, 2020.  [*Id.*]

Allowing HELFAND to file the *SAC* would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility in doing so.

HELFAND was able to streamline and simplify the *SAC*.  The Court will note HELFAND is no longer utilizing the standard *pro se* complaint.  It breaks out liability as to each specific Defendant.  The allegations are short, plain and non-conclusory.  Each cause of action is a valid one and are within the Court's jurisdiction.

HELFAND could not fully and satisfactorily amend earlier because HELFAND needed to complete key depositions, which had been originally set in June, 2020; but then moved to August, 2020, so as to accommodate newly appoint counsel for EWM and STEINMANDER.

Moreover, one of the key depositions had to, again, be moved to September 10, 2020, so as to accommodate the deponent, who was recovering from a two-week hospitalization.[2]

HELFAND could not have fully amended his pleading until taking the September 10, 2020, deposition.  After its completion, HELFAND promptly reminded Defendants of his intentions, which had been disclosed beforehand.

---

[2] The parties have been working cooperatively on discovery and five depositions have been completed to date, including of HELFAND.  The parties have approximately five more depositions set to be completed commencing September 21, 2020.

Further, HELFAND seeks to allege two new counts along with issues of vicarious liability based on conduct and practices uncovered by HELFAND in depositions. These new counts and vicarious liability theories include claims that are so closely intertwined with the original jurisdiction allegations; so as to form the same case and controversy. *Leave to Amend* should be granted. Should any Defendant object to the *SAC*; they can renew any prior dispositive motions or file a new one in due course.

## CERTIFICATION OF MEET AND CONFER EFFORTS

Pursuant to the Local Rules of this Court, all parties have met and conferred. A proposed *SAC* was submitted to Defendants for review on September 11, 2020. A copy of this *Motion* was furnished on September 12, 2020. Counsel for all parties conducted rigorous meet and confer. In this regard, HELFAND and counsel communicated with counsel EWM and STEINMANDER. EWM and STEINMANDER indicated that they wish the Court to rule on the pending motion to dismiss first. EWM and STEINMANDER also contend that the Court has no jurisdiction over the two state law claims. HELFAND and counsel for EJP and PELOSO communicated via email and telephonically. Counsel for EJP and PELOSO contend that amendment is futile; that the proposed *SAC* does not state any valid cause of action under the *Fair Housing Act*. Obviously, HELFAND disagrees.

September 16, 2020                           /S/ Steven F. Helfand
                                            Plaintiff

STEVEN F. HELFAND
1400 SW 137TH AVENUE, F 112
PEMBROKE PINES, FL 33027
786.676.1018
1400STEVEN.HELFAND@GMAIL.COM

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on this 16th day of September, 2020, that a true and correct copy of the foregoing was emailed and served on all counsel for parties appearing in this action.

September 16, 2020                    <u>/S/ Steven F. Helfand</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-cv-20113-KMW

STEVEN F. HELFAND,



Plaintiff,

*vs.*

ESSLINGER WOOTEN MAXWELL INC. d/b/a BERKSHIRE HATHAWAY
HOMESERVICES EWM REALTY; EDWARD PELOSO; EJP 888 BISCAYNE BLVD 2712,
LLC; and MARCELO STEINMANDER,

Defendants.

### SECOND AMENDED COMPLAINT & REQUEST FOR JURY TRIAL

1. Plaintiff, in *pro se*, STEVEN F. HELFAND,[1] [hereafter "HELFAND"] respectfully

submits this *Second Amended Complaint* [hereafter "SAC"].

## I. INTRODUCTION

2. This lawsuit stems from discriminatory *animus* directed towards HELFAND;

culminating in and compounded by the unlawful disposal of HELFAND's personal property by

his landlord due to such *animius*, with the participation of other tortfeasors, as separately

described, *infra*, in violation of the *Fair Housing Act* [hereafter "*FHA*"]. 42 U.S.C. § 3605. The

---

[1] Helfand is not an ordinary, *pro se*, litigant, having graduated from the *University of Miami, School of Law* in December 1999. Plaintiff was admitted to the *State Bar of California* for nearly twenty years. While no longer eligible to practice and disabled, Plaintiff discloses this up-front to the Court because lessened pleading standards for *pro se* litigants generally, are plainly inapplicable here.

*SAC* also alleges local law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to their federal claims in this action that they form part of the *same* case or controversy.

## I. THE PARTIES

3.  HELFAND is citizen of the State of Florida and Broward County, Florida. At the time of the relevant events that transpired, HELFAND was a resident of Miami-Dade County, Florida.

4.  Defendant, ESSLINGER WOOTEN MAXWELL INC. d/b/a BERKSHIRE HATHAWAY HOMESERVICES EWM REALTY [hereafter "EWM"] is one of the largest residential real estate firms in the United States. It is a Florida corporation with its principal address at 201 Alhambra Circle, Suite 1060, Coral Gables, FL. EWM served as the property manager and real estate broker/agent for Defendant EJP 888 Biscayne Blvd., 2712, LLC. [hereafter "EJP"] and Defendant, Edward J. Peloso [hereafter "PELOSO"].

5.  Defendant MARCELO STEINMANDER [hereafter "STEINMANDER"] is a citizen of the State of Florida and resides in Miami Beach, Florida. STEINMANDER is an employee of and/or realtor/property manager operating under the auspices of EWM's real estate brokerage license pursuant to the laws of the State of Florida. STEINMANDER's main-office and place of business is EWM's facility in Miami Beach, Florida. STEINMANDER, along with EWM, served as the property manager(s) and real estate agent(s) and/or broker(s) for EJP and PELOSO at the relevant times.

6.  EJP, is a Florida Limited Liability Company and was HELFAND's landlord. PELOSO is the sole manager and owner of EJP. EJP transacts business in Miami, Florida and owns and/or controls the residential property at 888 Biscayne Blvd., Unit 2712 [hereafter "the Unit."]

7.  PELOSO is a citizen of the State of Florida, and resides in Miami Beach, Florida.

PELOSO owns at ten residential rental properties in Florida, including the Unit.

## II.  JURISDICTION AND VENUE

### a.  Basis for Subject Matter Jurisdiction

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as HELFAND

asserts federal claims under the *FHA*; under 28 U.S.C. § 1343(a), *et seq.*, as HELFAND seeks to

secure relief under federal civil rights laws; and under 42 U.S.C. § 3613(a)(1)(A) as HELFAND

seeks appropriate relief regarding a discriminatory housing practice under the *FHA*.

9.  The Court has supplemental jurisdiction over Helfand's local law claims pursuant to

28 U.S.C. § 1367 (a), as these claims are so related to their federal claims in this action that they

form part of the same case or controversy.

### b.  Basis for Personal Jurisdiction

10.  This Court has personal jurisdiction over EWM, STEINMANDER, EJP and

PELOSO pursuant to Fed. R. Civ. P. 4(k)(1) because:

      A.   each transact business within the state and have sufficient contacts;

      B.   each have committed tortious and discriminatory acts within the state;

      C.   each regularly conduct business in the state; *and*

      D.   each are citizens and/or residents of the state.

### c.  Basis for Venue

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) as EWM,

STEINMANDER, EJP and PELOSO reside in this District in which it is subject to the Court's

personal jurisdiction, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the

*Second Amended Complaint*　　　　　Page 3 of 22　　　　　*Helfand v. Steinmander, et al.*

events or omissions giving rise to HELFAND's claims occurred in this District. The Unit is located at 888 Biscayne Blvd., 2712, Miami, Florida 33123, and is within this District.

### IV. THE *CORPORATE VEIL* BETWEEN PELOSO AND EJP SHOULD BE PIERCED

12. EJP does not maintain corporate minutes. EJP has failed to conduct annual meetings and properly operate pursuant to the *Florida Limited Liability Company Act* as codified in FLA Stat. § 605. EJP has commingled its resources with PELOSO and there is:

      A. a lack of separateness between the corporation and its shareholder(s) and EJP is an alter ego of PELOSO;

      B. improper conduct in the use of the corporation by the shareholder(s); and

      C. improper conduct that was the proximate cause of loss, as discussed, more fully *infra.*

13. PELOSO and EJP commingle personal and business funds and other assets, failing to segregate funds of separate entities.

      A. PELOSO uses his personal checking account at *TD Bank* for expenses of EJP; and

      B. PELOSO uses his personal *American Express* card for expenses of EJP.

14. PELOSO treats the corporation's assets as his own. PELOSO and EJP fail to maintain adequate corporate records including meeting minutes or fail to maintain separation between the records of separate entities.

15. PELOSO formed EJP, and other new corporations with the purpose of transferring the existing liability of another entity. EJP uses the same business location or office and employs the same employees or attorneys in separate entities.

16.  PELOSO and EJP are represented by the same attorney.

17.  PELOSO failed to adequately capitalize the corporation and has looted its corporate assets and income.

18.  PELOSO has used the corporation as an instrumentality for a single venture or the business of an individual or another corporation.

19.  PELOSO failed to maintain an arm's length relationship among the related parties and disregarded legal formalities.

## V. **EWM'S VICARIOUS AND _RESPONDEAT SUPERIOR_ LIABILITY FOR ACTIONS TAKEN BY STEINMANDER**

20.  EWM made agreements with STEINMANDER to perform acts associated with STEINMANDER's representation and/or assistance of EJP and PELOSO by express agreement and/or ratification and/or adoption after having full knowledge of the material facts and circumstances.  Such ratification occurred by way of express corporate acts and/or by any other legal means employed by EWM to approve any unauthorized or officious acts of those made in its behalf, and voluntarily accepted the benefits accruing to EWM from the engagement of STEINMANDER, EJP and/or PELOSO.

21.  After full knowledge, and having full liberty to decline the same, EWM adopted the agreement(s) _cum onere_, taking the burdens thereof with the benefits.

22.  In performing his duties, STEINMANDER was doing so in full accord with the operating rules, procedures and requirements of EWM.

23. EWM duly authorized STEINMANDER to take all actions STEINMANDER took on behalf of EWM, EJP and PELOSO and then ratified them by its managing brokers, vice-presidents, and general counsel.

24. EWM and STEINMANDER are represented by the same counsel.

25. EWM has also sufficiently participated in, meddled and interfered with the tasks performed by STEINMANDER.

## VI. <u>VICARIOUS AND *RESPONDEAT SUPERIOR* LIABILITY BY EJP AND PELOSO FOR ANY ACTIONS OR INACTION BY EWM AND/OR STEINMANDER</u>

26. EWM and STEINMANDER were property managers, agents and/or independent contractors for PELOSO and EJP.

27. Both EJP and PELOSO, either personally or through counsel, sufficiently participated in, meddled and interfered with the tasks performed by STEINMANDER and EWM.

28. EJP and PELOSO made agreements with EWM and STEINMANDER to perform acts associated with STEINMANDER's representation and/or assistance of EJP and PELOSO by express agreement and/or ratification and/or adoption after having full knowledge of the material facts and circumstances. Such ratification occurred by way of express corporate acts and/or by any other legal means employed by EJP and PELOSO to approve any unauthorized or officious acts of those made in their behalf, and voluntarily accepted the benefits accruing to EJP and PELOSO from the engagement of STEINMANDER and EWM.

29. After full knowledge, and having full liberty to decline the same, EJP and PELOSO adopted the agreement(s) *cum onere*, taking the burdens thereof with the benefits.

30.  In performing their duties, EWM and/or STEINMANDER were doing so in full accord with the operating rules, procedures and requirements of EJP and PELOSO.

31.  EJP and PELOSO duly authorized EWM and/or STEINMANDER to take all actions STEINMANDER took on behalf of EWM, EJP and PELOSO and then ratified them by its shareholder(s) and/or manager(s).

### VII. <u>VICARIOUS AND *RESPONDEAT SUPERIOR* LIABILITY BY EJP, PELOSO, STEINMANDER AND EWM FOR ANY ACTION OR INACTION BY FLORIDA ATTORNEY & NON-PARTY, ALBERTO CARDET</u>

32.  Attorney Cardet is a member in good standing of the State Bar of Florida.

33.  Attorney Cardet is not a party to this action.

34.  STEINMANDER recommended Attorney Cardet to EJP so as to serve as eviction counsel.

35.  Attorney Cardet was and is the actual and apparent agent of EJP and PELOSO at all relevant times, including during and after the eviction procedure in State Court.

36.  Attorney Cardet had the actual and apparent authority to speak and to act for his clients, EJP and PELOSO, in those matters necessary or incidental to the accomplishment of the purpose of his retention.

37.  Attorney Cardet did not exceed the scope of his representation and all actions taken by him were with actual or apparent authority conveyed by EJP and PELOSO.  If Attorney Cardet did exceed the scope of his representation, all such actions were nevertheless ratified and/ or authorized by EJP and PELOSO.

38.  Attorney Cardet provided legal advice and instructions to STEINMANDER and EWM, which they, also, followed, authorized and ratified.

*Second Amended Complaint*          Page 7 of 22          *Helfand v. Steinmander, et al.*

39.  STEINMANDER received Attorney Cardet's invoices, engaged with Attorney Cardet to discuss and frame the substantive issues, and was responsible for Attorney Cardet's direct supervision.

40.  Based on information and belief, Attorney Cardet does not have a written retainer agreement with EJP, PELOSO, EWM and/or STEINMANDER.

41.  Based on information and belief, Attorney Cardet does not have a written conflict waiver between EJP, PELOSO, STEINMANDER and/or EWM.

42.  STEINMANDER prepared eviction documents in "coordination" with Attorney Cardet and was Attorney Cardet's *liaison* with EJP, PELOSO, EWM and third parties.

43.  STEINMANDER stated that STEINMANDER and EWM were represented by Attorney Cardet, and Attorney Cardet was responsible for handling affairs on their behalf relating to all matters at issue here.

44.  Attorney Cardet was also the agent of STEINMANDER and EWM.

45.  Attorney Cardet had the actual and apparent authority to speak and to act for STEINMANDER and EWM in those matters necessary or incidental to the accomplishment of the purpose of his retention.

## VIII.  GENERAL FACTUAL ALLEGATIONS

### a.  HELFAND's Rental of the Unit

46.  A true and correct copy of the rental agreement for the Unit is attached as **Exhibit A.** HELFAND prepaid the rent for the one-year term, and provided a $3,000.00 security deposit. The net-payment made to EJP was $39,000.00.

**b.** **PELOSO's Improper Inquiry into HELFAND's Sexual Orientation and Gender-Identity.**

47.  In August, 2019, EJP, through co-Defendant, PELOSO, contacted HELFAND telephonically, and specifically demanded to know HELFAND's sexual orientation.  There was no legitimate basis for such an inquiry.

48.  PELOSO confirmed that EJP had obtained visitor logs from the condominium security desk; indicating late night visitors, who ***all*** happened to be male.  Because of the ostensible gender of the visitors, PELOSO indicated that Plaintiff was "***debasing***" his property and demanded that HELFAND leave; because of the implicit suggestion HELFAND was "gay."

49.  In response to a profanity-laced rant by PELOSO inquiring as to HELFAND's sexual orientation and gender-identity, HELFAND stated, "Yes, I'm gay and I'm HIV positive also.  What does this have to do with the lease?  I paid a year in advance!"

50.  HELFAND thereafter contacted PELOSO and indicated HELFAND had no interest in renewing the lease.

**c.** **STEINMANDER and EWM Announce They are Property Managers for the Unit**

51.  STEINMANDER and EWM surfaced in mid-September, 2019.

52.  STEINMANDER stated that he and EWM were the property managers and real estate agents for EJP and PELOSO.  See, *e.g.*, **Exhibit B** [**signed by Marcelo Steinmander and indicating he is the property manager and prepared by him.  Exhibit B further indicates that the Notice was prepared "*in coordination*" with Attorney Cardet].**

53. In mid-September, 2019, STEINMANDER told HELFAND that both he and, ostensibly, EWM were the property manager(s) and realtor(s) for the Unit and gave an EWM business card to HELFAND.

### i. HELFAND Related a Number of Problems with the Unit to STEINMANDER which STEINMANDER Ignored only to Later Rely Upon Them to Evict HELFAND on a *Pre-Textual* Basis.

54. HELFAND verbally outlined a host of issues with the Unit that required some scrutiny, including with the electrical box, wiring and plumbing to STEINMANDER.

55. HELFAND also noted ongoing problems with the air conditioning system to STEINMANDER.

56. STEINMANDER stated that HELFAND needed to sign over all his "*rights*" to the unit, along with his furnishings and art, which made no sense. HELFAND presumed STEINMANDER was referring to "digital" rights because he wanted to take photographs of the unit with HELFAND's furnishings exhibited. STEINMANDER commented that the furniture looked extremely valuable and could help him in the context of listing the Unit. HELFAND suggested that STEINMANDER send him whatever documents he wanted HELFAND to sign, and HELFAND would review them. HELFAND also requested that STEINMANDER provide proof of insurance so that if something happened during a tour or showing, HELFAND would be protected. STEINMANDER never did, all the while accusing HELFAND of non-cooperation.

### ii. STEINMANDER Propagated EJP's and PELOSO's Earlier *Animus* Based on Sexual Orientation, Gender-Identity and HELFAND's HIV Positive Status.

57. In mid-September 2019, STEINMANDER demanded that HELFAND "move out immediately," in spite of the pre-paid rent.

58.  STEINMANDER stated that EJP and PELOSO did **"not want him any more"** when HELFAND inquired about a proposed resolution and issues relating to renewal or non-renewal.

59.  HELFAND, at least according to STEINMANDER, **"had bad karma because he was gay.  We don't [referring to Defendant EJP], need you here!"**  STEINMANDER further stated, **"You are devaluing our unit!"**

60.  Trying to mitigate all issues and disputes so as to get along, HELFAND had suggested HELFAND could conceivably move-out early but would want a return of his security deposit and *pro-rated* rent returned for the unused period.  STEINMANDER ultimately ignored this proposal.

61.  STEINMANDER also specifically threatened, just before concluding his visit, that HELFAND would be monitored "*going forward*"; knowing that STEINMANDER had obtained information from a third party suggesting HELFAND was suffering from paranoia and anxiety.

62.  STEINMANDER visibly re-coiled after noticing an empty bottle of HELFAND's HIV medicine on the kitchen counter - and proceeded as if the entire apartment was "*contaminated.*"  STEINMANDER then made a sudden retreat from the Unit which was plainly evident to HELFAND as to the reason(s) why; given direct observation(s).

### iii.  STEINMANDER Recommends that HELFAND be Evicted Because HELFAND is Purportedly a *"Drug-Addict"* Suffering from *"Paranoia"* and Eviction was Warranted to Somehow. Help HELFAND.

63.  STEINMANDER obtained, unverified and erroneous information from a third-party, prepared for litigation purposes (to facilitate an eviction against HELFAND), suggesting that HELFAND was a "*drug-addict*" and suffered from paranoia.

64.  STEINMANDER then distributed this, and other, salacious information to EJP and PELOSO, as if it were factual, when it was not.   STEINMANDER made no attempts to verify any of the information, including discussing it with HELFAND.

65.  STEINMANDER recommended to EJP and PELOSO that HELFAND be evicted on these grounds, so as to purportedly, protect HELFAND from himself.

66.  Recognizing that being a purported, "drug-addict" is not a valid basis on which to orchestrate an eviction, STEINMANDER "coordinated" a *pre-textual* basis with Attorney Cardet.  In doing so, STEINMANDER and EJP, along with Attorney Cardet, misled the eviction Court so as to obtain a default judgment, given HELFAND's incapacity and inability to respond, all the while refusing to communicate.

### iv.  STEINMANDER and EJP Initiate a Sham Eviction Against HELFAND that is, Purposefully, Procedurally Defective so as to Truncate Notice and Trigger Anxiety, Depression and Further Aggravate Perceived HELFAND's distress.[2]

67.  So as to gain tactical advantage due to shortened notice periods, the eviction of HELFAND was based on a contrived and non-delivered notice of termination.

68.  STEINMANDER signed the notice as a service-agent before the notice was served, sent it by U.S. mail and not delivered personally to HELFAND in spite of attesting to the contrary, and never read it for accuracy in spite of *"coordinating"* in its preparation and sending a confirming copy of it to PELOSO.

---

[2] HELFAND is not collaterally attacking the eviction or challenging it here.  Rather, HELFAND contends that the actions taken by STEINMANDER and Attorney Cardet are substantial evidence of *FHA* violations and taken in furtherance of earlier discriminatory *animus*.

69. STEINMANDER and EJP orchestrated the baseless eviction solely to take advantage of HELFAND's fragile medical status.[3]

70. The eviction was brought, approximately, one month prior to the lease ending date, in spite of the fact no money was owed for rent and in spite of HELFAND's fragile medical status; for reasons all instigated and driven by *animus* or other unfounded claims.

71. HELFAND defaulted on the eviction and ultimately was detained after being thrown into a psychotic episode instigated by the very tactics herein complained about and alleged to have occurred, occasioned by the *pre-textual* eviction and STEINMANDER's intentional triggering of anxiety and depression in HELFAND based on the earlier claim that HELFAND was being "*monitored.*"

**d. STEINMANDER Disposes of HELFAND'S Personal Property *AFTER* Execution of the Writ of Possession Because STEINMANDER Believed HELFAND's Property was "*Contaminated*" with HIV; and Even Though STEINMANDER Knew HELFAND Wanted to Locate and Recover HELFAND's Property.**

72. After execution of a writ of possession on November 1, 2019; *STEINMANDER unlawfully disposed of all of HELFAND's property because STEINMANDER and EJP believed it was "contaminated" by HIV and in furtherance of a discriminatory animus.*

**i. HELFAND's Tangible Personal Property was Worth Approximately $300,000.00 and Included:**

A. art and fine lithographs of Jules Cheret;

---

[3] After this warning, according to information and belief, STEINMANDER orchestrated a series of intrusions into the unit so as to destabilize HELFAND. PELOSO contacted FP&L to disable the power to the Unit and to cut-off/terminate services, occasioning considerable stress to HELFAND during the summer heat in Miami, and aggravating HELFAND's serious health conditions. The same with internet services. The interruption of these services was based on and due to discriminatory *animus.*

B.  fine furnishings; some purchased from the *Urban Chateau* in San Francisco;

C.  gilded mirrors with closed end-frames, one of a kind, designed by a noted designer;

D.  about 100 collection books;

E.  electronic equipment, including *KEF* Reference Series Speakers;

F.  an LCD television;

G.  laptop computers;

H.  a gilt-wood coffee table in the *beaux arts* style;

I.  fine chairs;

J.  a new mattress;

K.  bedding;

L.  computer equipment;

M.  fine china, cutlery;

N.  highly personal effects, jewelry;

O.  rugs from Turkey and Persia;

P.  kitchen utensils;

Q.  cash;

R.  bitcoins;

S.  all clothing [including four *Dolce & Gabbana* jackets and a *Brioni* and *Prada* Jacket];

T.  personal papers;

U.  objects of art;

V.  manuscripts;

W.  personal photographs of enormous sentimental value; *and*

X.  receipts, paperwork, and medication.

73.  Every item of property owned by HELFAND, acquired over a nearly twenty-year time-frame, was inexplicably disposed of, as if it were somehow garbage, which it was not; and as if this was somehow responsible, which it was not, and should not have been, *in spite of repeat efforts to locate and recover the property documented in writing* by HELFAND.

### ii.  <u>EJP and PELOSO Fail to Respond to Any of HELFAND'S Repeat Efforts to Reacquire his Personal Property.</u>

74.  Attorney Cardet refused to communicate, in any manner, with HELFAND so that HELFAND could locate and recover his personal property.  See **Exhibit G**.

75.  HELFAND had attempted to contact Attorney Cardet multiples of times, *via* email, certified mail, and telephonically, to no avail, in addition to contacting STEINMANDER, EWM and PELOSO *before* the property was disposed.

76.  STEINMANDER would not divulge where HELFAND'S property was because Attorney Cardet had instructed STEINMANDER not to communicate with HELFAND.

77.  PELOSO refused to directly communicate with HELFAND as well, ostensibly based on the same instructions from Attorney Cardet.

78.  EJP and PELOSO, through Attorney Cardet, instructed STEINMANDER and EWM not to communicate, in any manner, with HELFAND, in spite of the fact that both

STEINMANDER and EWM knew that HELFAND was inquiring as to the location of his personal property so that it could be recovered.

79.  The *writ of possession* instructed that questions from anyone, including HELFAND be directed to either STEINMANDER or Attorney Cardet.

### iii.  <u>STEINMANDER had All of HELFAND's Personal Property Disposed with No Notice to HELFAND in Spite of the Fact STEINMANDER Knew HELFAND Wanted his Property Back, in Furtherance of the Discriminatory *Animus* they Harbored Against HELFAND.</u>

79.  On November 6, 2020, HELFAND was finally able to reach STEINMANDER on his cell phone before 7:00 a.m. in the morning; *__the disposal occurred six hours later__*.  See **Exhibits E-G**.

80.  HELFAND told STEINMANDER that HELFAND wanted to find out where his property was located so it could be recovered.

81.  Without bothering to shed any light or information as to the whereabouts or status of the property, and after this request was made by HELFAND, STEINMANDER hung-up on Plaintiff, keeping HELFAND completely in the dark.  The same result occurred when Plaintiff called PELOSO.  Other efforts to reach EWM were unsuccessful.  This is all documented in confirming emails.  Additionally, the condominium association, told STEINMANDER that it would not and could not be involved in any aspect of the furniture disposal, other than reserving elevators, if necessary.  See **Exhibit C**.

82.  All calls made to Attorney Cardet went straight to voicemail.  Multiples of messages were left (including on each day prior); but Attorney Cardet failed and/or refused to respond to a single one.

83.  *Remarkably, in spite of knowing that Plaintiff wanted to ascertain the whereabouts of his personal property and recover it as early as October 31, 2020, STEINMANDER permitted 1800-GOT-JUNK to dispose of the property anyway.*  See **Exhibits E-G**.

**e.  STEINMANDER and Attorney Cardet Attempt to Cover-Up Liability By Inflating Damages to the Unit Allegedly Caused by HELFAND.**

84.  On November 14, 2019, STEINMANDER, with approval from Attorney Cardet, state the damages to the Unit exceeded $10,000.00; identifying a variety of repairs claimed to be attributable to Plaintiff.  See **Exhibit D.**  These representations were unfounded and unreasonable, and only made because STEINMANDER knew that he, on behalf, of EWM, EJP and PELOSO, proceeded unlawfully in the disposal of HELFAND's property based on discriminatory *animus*.

85.  HELFAND timely made an objection and demanded receipts, invoices and documentation to justify the damage claim.  No response was received from EJP, STEINMANDER, PELOSO or Attorney Cardet.

86.  STEINMANDER admits that STEINMANDER *purposefully inflated* the damages allegedly caused to the Unit as "*much as possible*" "*just in case.*"  This was in reference to liability for the unlawful disposal of property and the claims attributable to discriminatory *animus*.  **Exhibit D.**

87.  STEINMANDER and EJP claim damages for work that was never done; failed to document any work actually completed; and now relies on a series of invoices from *unlicensed* contractors who were purposefully hired to justify work that was not reasonably attributable to

HELFAND or otherwise reasonable so as to dodge liability or obtain a set-off.  No significant repairs were made or can be documented; all occasioned by discriminatory *animus*.

## IX.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### *FAIR HOUSING ACT*
### BY HELFAND AGAINST EWM, STEINMANDER, EJP & PELOSO

88.  HELFAND incorporates by reference Paragraphs 1-87, as if fully set forth herein.

89.   The FHA makes it unlawful "*for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.*"  42 U.S.C. § 3605(a).

90.  Plaintiff is a protected class member and received disparate treatment as a direct result of Plaintiff's sexual orientation, HIV Positive status, gender-identity, and perceived "drug-addict[ed]" status.  Plaintiff was treated differently from similarly situated renters and/or tenants by EWM, STEINMANDER, EJP and PELOSO.

91.  HELFAND is an aggrieved person as defined by the Fair Housing Act, 42 U.S.C. § 3602(i), and as a direct and proximate result of STEINMANDER and EJP's unlawful discriminatory conduct have sustained damages.

92.  In particular, the *FHA* violations occurred because of HELFAND's sexual orientation, HIV Positive status, gender-identity, and perceived "*drug-addict[ed]*" status.  But, for these protected status' of HELFAND and the, improper, *animus* based thereon; EWM, STEINMANDER, EJP and PELOSO would not have violated the *FHA* and discriminated against HELFAND.

93. HELFAND suffered damages that were proximately caused by discriminatory animus orchestrated by EWM, STEINMANDER, EJP and PELOSO.

## SECOND CAUSE OF ACTION
### *CONVERSION PURSUANT TO THE COURT'S SUPPLEMENTAL JURISDICTION* AGAINST STEINMANDER, EWM, EJP & PELOSO BY HELFAND

94. HELFAND incorporates by reference Paragraphs 1-87, as if fully set forth herein.

95. HELFAND owns or has the right to possess the personal property in question at the time of the interference or unlawful disposal.   Paragraph 72 (i), *supra*, lists the property converted by STEINMANDER.

96. STEINMANDER intentionally interfered with the HELFAND's personal property.

97. The interference deprived HELFAND of possession or use of the personal property in question.

98. The interference caused damages to HELFAND.

99. The conversion did not amount to merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.

100. HELFAND was damaged by the conversion of his property.

## THIRD CAUSE OF ACTION
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS PURSUANT TO THE COURT'S SUPPLEMENTAL JURISDICTION* AGAINST DEFENDANT STEINMANDER, EWM, EJP & PELOSO BY HELFAND

101. By unlawfully disposing HELFAND's property, when STEINMANDER knew that HELFAND was attempting to recover it, STEINMANDER was deliberate or reckless and inflicted mental suffering.

102. The disposal of personal contents by STEINMANDER amounted to outrageous conduct.

103. The conduct caused HELFAND emotional distress.

104. The distress was severe. STEINMANDER's actions were outrageous and reckless, designed to inflict severe emotional distress on HELFAND.

105. HELFAND suffered damages as a proximate result.

## **PRAYER FOR RELIEF**

WHEREFORE, HELFAND respectfully requests *Final Judgment* against EWM, STEINMANDER, EJP and PELOSO as follows:

a. **On the First Cause of Action**

 (a) Finding that EWM's, STEINMANDER's, EJP's and PELOSO's discriminatory actions and inactions taken  practices violated the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*

 (b) Finding that EWM and EJP and PELOSO have vicarious and/or *respondeat superior* liability for the actions taken by STEINMANDER and Attorney Cardet.

 (c) Finding that the corporate veil should be pierced as between EJP and PELOSO.

 (d) Awarding such damages to HELFAND as will fully compensate him.

 (e) Awarding punitive damages to HELFAND.

 (f) All damages and costs for which he is lawfully entitled to receive pursuant to the *Fair Housing Act.*

b. **On the Second Cause of Action**

    (a) Finding that STEINMANDER converted HELFAND'S property.

    (b) Finding that EWM and EJP and PELOSO have vicarious and/or *respondeat superior* liability for the actions taken by STEINMANDER and Attorney Cardet.

    (c) Finding that the corporate veil should be pierced as between EJP and PELOSO.

    (d) Awarding such damages to HELFAND as will fully compensate him.

    (e) Awarding punitive damages to HELFAND.

c. **On the Third Cause of Action**

    (a) Finding that STEINMANDER inflicted severe emotional distress on HELFAND.

    (b) Finding that EWM and EJP and PELOSO have vicarious and/or *respondeat superior* liability for the actions taken by STEINMANDER and Attorney Cardet.

    (c) Finding that the corporate veil should be pierced as between EJP and PELOSO.

    (d) Awarding such damages to HELFAND as will fully compensate him.

    (e) Awarding punitive damages to HELFAND.

*Respectfully submitted by*:

Date: September 10th, 2020          /S/ Steven F. Helfand

                                        Plaintiff, in *pro se*

STEVEN F. HELFAND

*Second Amended Complaint*          Page 21 of 22          *Helfand v. Steinmander, et al.*

1400 SW 137TH AVENUE, F 112
PEMBROKE PINES, FL 33027
786.676.1018
1400STEVEN.HELFAND@GMAIL.COM

ID-MS-EWM 000009

Exhibit A

ID-MS-EWM 000009

**Nonlawyer Disclosure**

(Douglas Elliman) REAL ESTATE

**Instructions to Licensee:** Before you begin to complete the next form, you must give this nonlawyer disclosure to the landlord or tenant for whom you are filling in the blanks. (If you are filling in the blanks for both landlord and tenant, complete two nonlawyer disclosures and give one to each.)

1. Insert your name in the first 5 blank "Name" spaces and sign below.
2. Have the landlord or tenant whom you are assisting complete the provision regarding her/his ability to read English, and have her/him sign below.
3. Give this completed disclosure to the landlord or tenant, as appropriate. Keep a copy of this completed disclosure and all forms you give to the landlord or tenant in your files for at least 6 years.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_Rien Pacio Viscount_ told me that he/she is a nonlawyer and may not give legal
(Name)
advice, cannot tell me what my rights or remedies are, cannot tell me how to testify in court, and cannot represent me in court.

Rule 10-2.1(b) of the Rules Regulating The Florida Bar defines a paralegal as a person who works under the supervision of a member of The Florida Bar and who performs specifically delegated substantive legal work for which a member of The Florida Bar is responsible. Only persons who meet the definition may call themselves paralegals. _Rien Pacio Viscount_ informed me that he/she is not a paralegal as defined by the
(Name)
rule and cannot call himself/herself a paralegal.

_Rien Pacio Viscount_ told me that he/she may only type the factual information
(Name)
provided by me in writing into the blanks on the form. Except for typing, _Rien Pacio Viscount_
(Name)
may not tell me what to put in the form and may not complete the form for me. However, if using a form approved by the Supreme Court of Florida, _____ may ask me factual questions to fill in
(Name)
the blanks on the form and may also tell me how to file the form.

**Landlord or Tenant:**
[X] I can read English.
☐ I cannot read English but this notice was read to me by _____
(Name)
in _____ (Language),
which I understand.

_Edward Glaser_
Landlord or Tenant Signature

_E37 888 Discovne Blvd 2H2 LLC_
Landlord or Tenant Signature

_____
Licensee Signature

NO-2  Rev 7/13
©2013 Florida Realtors®

ID-MS-EWM 000009

ID-MS-EWM 000009

ID-MS-EWM 000010                                                    ID-MS-EWM 000010

*Pkg Space #11-38 (Tandem; Double Car Space*

**RESIDENTIAL LEASE FOR APARTMENT OR UNIT IN MULTI-FAMILY RENTAL HOUSING (OTHER THAN A DUPLEX) INCLUDING A MOBILE HOME, CONDOMINIUM, OR COOPERATIVE (FOR A TERM NOT TO EXCEED ONE YEAR)**



(Not To Be Used For Commercial, Agricultural, or Other Residential Property)

WARNING: *IT IS VERY IMPORTANT TO READ ALL OF THE LEASE CAREFULLY. THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS*

AN ASTERISK (*) OR A BLANK SPACE (_____) INDICATES A PROVISION WHERE A CHOICE OR A DECISION MUST BE MADE BY THE PARTIES

NO CHANGES OR ADDITIONS TO THIS FORM MAY BE MADE UNLESS A LAWYER IS CONSULTED.

I. **TERMS AND PARTIES.** This is a lease (the "Lease") for a period of **12** months (the "Lease Term"), beginning **DECEMBER 1ST 2018** and ending **NOVEMBER 30TH 2019**, between **EJP 888 BISCAYNE BLVD 2712 LLC** and **WALTER FRED ELLINGWOOD III @ HELFAND STEVEN FRANKLIN** .

(In the Lease, the owner, whether one or more, of the property is called "Landlord." All persons to whom the property is leased are called "Tenant.")

Landlord's E-mail Address: _____
Landlord's Telephone Number: _____
Tenant's E-mail Address: _____
Tenant's Telephone Number _____

II. **PROPERTY RENTED.** Landlord leases to Tenant apartment or unit no. **2712** in the building located at **888 BISCAYNE BLVD** (street address), known as **MARINA BLUE** (name of apartment or condominium) **MIAMI** (city) Florida **33132** (zip code), together with the following furniture and appliances: **CEILINGS LAMP - 60' TV - WINDOW TREATMENTS - KITCHEN APPLIANCES - WASHER AND DRYER**

[List all furniture and appliances. If none, write "none."] (In the Lease, the property leased, including furniture and appliances, if any, is called "the Premises.")

III. **COMMON AREAS.** Landlord grants to Tenant permission to use, during the Lease Term, along with others, the common areas of the building and the development of which the Premises are a part

IV. **RENT PAYMENTS AND CHARGES.** Tenant shall pay rent for the Premises in installments of $ **36,000** each on the ~~day of each~~ (month, week). *FULL UPON SIGNING THE LEASE* (a "Rental Installment Period," as used in the Lease, shall be a month if rent is paid monthly, and a week if rent is paid weekly.) Tenant shall pay with each rent payment all taxes imposed on the rent by taxing authorities. The amount of taxes payable on the beginning date of the Lease is $ **0** for each installment ~~The amount of each installment~~ of rent plus taxes ("the Lease Payment"), as of the date the Lease begins, is $ **36,000**. Landlord will notify Tenant if the amount of the tax changes. Tenant shall pay the rent and all other charges required to be paid under the Lease by cash, valid check, or money order. Landlord may appoint an agent to collect the Lease Payment and to perform Landlord's obligations.

Landlord ( ) ( ) and Tenant ( ) ( ) acknowledge receipt of a copy of this page, which is Page 1 of 18.

RLAUCC-1x   Rev 7/10   Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar
Serial# 066518-208181-1234417

ID-MS-EWM 000010                                                    ID-MS-EWM 000010

ID-MS-EWM 000011

ID-MS-EWM 000011

Unless this box ☐ is checked, the Lease Payments must be paid in advance beginning **DECEMBER 1ˢᵗ 2018**
(date)

If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from

_____ through _____ in the amount of $_____ and shall be due
(date)                              (date)

on _____. (If rent paid monthly, prorate on a 30-day month.)
(date)

**V. DEPOSITS, ADVANCE RENT, AND LATE CHARGES.** In addition to the Lease Payments described above, Tenant shall pay the following: (check only those items that apply)

☑ a security deposit of $ **3,000** to be paid upon signing the Lease.

☑ advance rent in the amount of $ **36,000** for the Rental Installment Periods of **12 MONTHS** to be paid upon signing the Lease.

☐ a pet deposit in the amount of $_____ to be paid upon signing the Lease.

☐ a late charge in the amount of $ _____ for each Lease Payment made more than _____ days after the date it is due

☐ a bad check fee in the amount $_____ (not to exceed $20.00 or 5% of the Lease Payment, whichever is greater) if Tenant makes any Lease Payment with a bad check. If Tenant makes any Lease Payment with a bad check, Landlord can require Tenant to pay all future Lease Payments in cash or by money order.

☐ Other _____

☐ Other _____

**VI. SECURITY DEPOSITS AND ADVANCE RENT.** If Tenant has paid a security deposit or advance rent the following provisions apply.
A.      Landlord shall hold the money in a separate interest-bearing or non-interest-bearing account in a Florida banking institution for the benefit of Tenant. If Landlord deposits the money in an interest-bearing account, Landlord must pay Tenant interest of at least 75% of the annualized average interest paid by the bank or 5% per year simple interest, whichever Landlord chooses. Landlord cannot mix such money with any other funds of Landlord or pledge, mortgage, or make any other use of such money until the money is actually due to Landlord; or
B.      Landlord must post a surety bond in the manner allowed by law. If Landlord posts the bond, Landlord shall pay Tenant 5% interest per year.
At the end of the Lease, Landlord will pay Tenant, or credit against rent, the interest due to Tenant. No interest will be due Tenant if Tenant wrongfully terminates the Lease before the end of the Lease Term.
C.      If Landlord rents 5 or more dwelling units, then within 30 days of Tenant's payment of the advance rent or any security deposit, Landlord must notify Tenant in writing of the manner in which Landlord is holding such money, the interest rate, if any, that Tenant will receive, and when such payments will be made.

**VII. NOTICES.** **PIER PAOLO VISCONTI** is Landlord's Agent. All notices to Landlord and all
(name)

Lease Payments must be sent to Landlord's Agent at _____
(address)

unless Landlord gives Tenant written notice of a change. Landlord's Agent may perform inspections on behalf of Landlord, subject to Article XII below. All notices to Landlord shall be given by certified mail, return receipt requested, or by hand delivery to Landlord or Landlord's Agent.

Any notice to Tenant shall be given by certified mail, return receipt requested, or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at the Premises.

**VIII. USE OF PREMISES.** Tenant shall use the Premises only for residential purposes. Tenant also shall obey, and require anyone on the Premises to obey, all laws and any restrictions that apply to the Premises. Landlord will give Tenant notice of any restrictions that apply to the Premises.

If the Premises are located in a condominium or cooperative development, the Lease and Tenant's rights under it, including as to the common areas, are subject to all terms of the governing documents for the project, including, without limitation, any Declaration of Condominium or proprietary lease, and any restrictions, rules, and regulations now existing or hereafter adopted, amended, or repealed.

Landlord (___) (___) and Tenant (___) (___) acknowledge receipt of a copy of this page, which is Page 2 of 16.

RLAUCC-1x   Rev 7/16   Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10.2.1(a) of the Rules Regulating the Florida Bar
Serial# 008818-200181-1234417

ID-MS-EWM 000012

ID-MS-EWM 000012

Unless this box ☐ is checked, Landlord may adopt, modify, or repeal rules and regulations for the use of common areas and conduct on the Premises during the Lease Term. All rules and regulations must be reasonable and in the best interest of the development in which the Premises are located.

Occasional overnight guests are permitted. An occasional overnight guest is one who does not stay more than _____ rights in any calendar month (if left blank, 7). Landlord's written approval is required to allow anyone else to occupy the Premises.

Unless this box ☐ is checked or a pet deposit has been paid, Tenant may not keep any pets or animals on the Premises without Landlord's approval of the pet or animal in writing

Unless this box ☐ is checked, no smoking is permitted in the Premises.

Tenant shall not keep any dangerous or flammable items that might increase the danger of fire or damage on the Premises without Landlord's consent

Tenant shall not create any environmental hazards on or about the Premises

Tenant shall not destroy, deface, damage, impair, or remove any part of the Premises belonging to Landlord, nor permit any person to do so.

Tenant may not make any alterations or improvements to the Premises without first obtaining Landlord's written consent to the alteration or improvement. However, unless this box ☐ is checked, Tenant may hang pictures and install window treatments in the Premises without Landlord's consent, provided Tenant removes all such items before the end of the Lease Term and repairs all damage resulting from the removal.

Tenant must act, and require all other persons on the Premises to act, in a manner that does not unreasonably disturb any neighbors or constitute a breach of the peace.

IX. MAINTENANCE: Landlord and Tenant agree that the maintenance of the Premises must be performed by the person indicated below.

A. Landlord's Required Maintenance. Landlord will comply with applicable building, housing, and health codes relating to the Premises. If there are no applicable building, housing, and health codes, Landlord shall maintain the roofs, windows, exterior walls, screens, foundations, floors, structural components, and steps, and keep the plumbing in reasonable working order. If the Premises are located in a condominium, Tenant acknowledge that the maintenance of the structural elements and common areas is performed by the condominium association as part of the common area maintenance. Landlord shall assure that the association complies with applicable building, housing, and health codes relating to the Premises. If there are no applicable building, housing, or health codes, Landlord shall assure that the association maintains and repairs roofs, porches, windows, exterior walls, screens, foundations, floors, structural components, and steps, and keeps the plumbing in reasonable working order. Landlord will be responsible for the maintenance of any items listed above for which the association is not responsible.

B. Elective Maintenance. Fill in each blank space in this section with Landlord or Tenant to show who will take care of the item noted. If a space is left blank, Landlord will be required to take care of that item (or assure that the association takes care of the items if the Premises are located in a condominium).

| | Landlord | Tenant |
|---|---|---|
| Smoke Detectors | | ☑ |
| Extermination of rats, mice, roaches, ants, wood-destroying organisms, and bedbugs | ☑ | |
| Locks and keys | | ☑ |
| Clean and safe condition of outside areas | | ☑ |
| Garbage removal and outside garbage receptacles | | ☑ |
| Running water | | ☑ |
| Hot water | ☑ | |
| Lawn | | ☑ |
| Heat | ☑ | |
| Air conditioning | | ☑ |
| Furniture | | ☑ |
| Appliances | ☑ | |
| Fixtures | | ☑ |
| Pool (including filters, machinery, and equipment) | | ☑ |
| Heating and air conditioning filters | | ☑ |
| Other: A/C FILTERS TO BE CHANGED ONCE A MONTH AT TENANT'S EXPENSE | | |

Tenant's responsibility, if any, indicated above, shall not include major maintenance or major replacement of equipment.

Landlord shall be responsible for major maintenance or major replacement of equipment, except for equipment for which Tenant has accepted responsibility for major maintenance or major replacement in the previous paragraph.

Major maintenance or major replacement means a repair or replacement that costs more than $ 1500

Landlord _____ and Tenant _____ acknowledge receipt of a copy of this page, which is Page 3 of 18.

RLHUCC 1x  Rev 7/18  Approved on April 13, 2018, by the Supreme Court of Florida  for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

Senate 83818-20281-1234477

ID-MS-EWM 000013                                                              ID-MS-EWM 000013

Tenant shall be required to vacate the Premises on 7 days' written notice, if necessary, for extermination pursuant to this subparagraph. When vacation of the Premises is required for extermination, Landlord shall not be liable for damages but shall abate the rent.

Nothing in this section makes Landlord responsible for any condition created or caused by the negligent or wrongful act or omission of Tenant, any member of Tenant's family, or any other person on the Premises with Tenant's consent.

C.    Tenant's Required Maintenance. At all times during the Lease Term, Tenant shall:
      1. comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes;
      2. keep the Premises clean and sanitary;
      3. remove all garbage from the dwelling unit in a clean and sanitary manner;
      4. keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and
      5. use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators.

**X. UTILITIES.** Tenant shall pay all charges for hook-up, connection, and deposit for providing all utilities and utility services to the Premises during the Lease Term except WATER SEWER, which Landlord agrees to provide at Landlord's expense. (Specify any utilities to be provided and paid for by Landlord such as water, sewer, oil, gas, electricity, telephone, garbage removal, etc.).

**XI. SERVICEMEMBER.** If Tenant is a member of the United States Armed Forces on active duty or state active duty or a member of the Florida National Guard or United States Reserve Forces, the Tenant has rights to terminate the Lease as provided in Section 83.682, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

**XII. LANDLORD'S ACCESS TO PREMISES.** Landlord or Landlord's Agent may enter the Premises in the following circumstances:
      A. At any time for the protection or preservation of the Premises.
      B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
      C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
            1 with Tenant's consent;
            2. in case of emergency;
            3. when Tenant unreasonably withholds consent; or
            4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment Period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant's consent or for the protection or preservation of the Premises.)

**XIII. PROHIBITED ACTS BY LANDLORD.** Landlord is prohibited from taking certain actions as described in Section 83.67, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

**XIV. CASUALTY DAMAGE.** If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant's consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the Premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant's liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.

**XV. DEFAULTS/REMEDIES.** Should a party to the Lease fail to fulfill their responsibilities under the Lease or need to determine whether there has been a default of the Lease, refer to Part II, Chapter 83, entitled Florida Residential Landlord and Tenant Act which contains information on defaults and remedies. A copy of the current version of this Act is attached to the Lease.

**XVI. ASSIGNMENT AND SUBLEASING.** Unless this box ☐ is checked, Tenant may not assign the Lease or sublease all or any part of the Premises without first obtaining Landlord's written approval and consent to the assignment or sublease.

**XVII. RISK OF LOSS.** Subject to the next sentence, Landlord shall not be liable for any loss by reason of damage, theft, or otherwise to the contents, belongings, and personal effects of the Tenant, or Tenant's family, agents, employees, guests, or visitors. Landlord shall not be liable if such damage, theft, or loss is caused by Tenant, Tenant's family, agents, employees, guests, or visitors. Nothing contained in this provision shall relieve Landlord or Tenant from responsibility for loss, damage, or injury caused by its own negligence or willful conduct.

**XVIII. SUBORDINATION.** The Lease is automatically subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.

**XIX. LIENS.** The interest of the Landlord shall not be subject to liens for improvements by the Tenant as provided in Section 713.10, Florida Statutes. Tenant shall notify all parties performing work on the Premises at Tenant's request that the Lease does not allow any liens to attach to Landlord's interest.

Landlord (____) (____) and Tenant (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 16.

RLAUCC 1x   Rev 7/16   Approved on April 15 2010, by the Supreme Court of Florida, for use under rule 10 2 1(a) of the Rules Regulating the Florida Bar
Sazer 066610-200181-1234417

ID-MS-EWM 000013                                                              ID-MS-EWM 000013

ID-MS-EWM 000014

ID-MS-EWM 000014

**XX. APPROVAL CONTINGENCY.** If applicable, the Lease is conditioned upon approval of Tenant by the association that governs the Premises. Any application fee required by an association shall be paid by ☐ Landlord ☑ Tenant. If such approval is not obtained prior to commencement of Lease Term, either party may terminate the Lease by written notice to the other given at any time prior to approval by the association, and if the Lease is terminated, Tenant shall receive return of deposits specified in Article V, if made. If the Lease is not terminated, rent shall abate until the approval is obtained from the association. Tenant agrees to use due diligence in applying for association approval and to comply with the requirements for obtaining approval. ☐ Landlord ☑ Tenant shall pay the security deposit required by the association, if applicable.

**XXI. RENEWAL/EXTENSION.** The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but in no event may the total Lease Term exceed one year. A new lease is required for each year.

**XXII. LEAD-BASED PAINT.** ☐ Check and complete if the dwelling was built before January 1, 1978.  **Lead Warning Statement** (when used in this article, the term Lessor refers to Landlord and the term Lessee refers to Tenant)

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure (initial)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below):

(i) ☐ _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain)

_____

_____

(ii) ☐ _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
_____ (b) Records and reports available to the Lessor (check (i) or (ii) below):

(i) ☐ _____ Lessor has provided the Lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below)

_____

_____

(ii) ☐ _____ Lessor has  no reports  or records  pertaining to  lead-based  paint and/or  lead-based  paint hazards  in the housing.

**Lessee's Acknowledgment (initial)**

_____ (c) Lessee has received copies of all information listed above.
_____ (d) Lessee has received the pamphlet *Protect Your Family From Lead in Your Home.*

**Agent's Acknowledgment (initial)**

_____ (e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and  is aware of  his/her  responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Lessor's signature | Date | Lessor's signature | Date |
| _____ | _____ | _____ | _____ |
| Lessee's signature | Date | Lessee's signature | Date |
| _____ | _____ | _____ | _____ |
| Agent's signature | Date | Agent's signature | Date |

Landlord (_____) (_____) and Tenant (_____) (_____) acknowledge receipt of a copy of this page, which is Page 8 of 18.

RLAUCC 1x   Rev 7/16   Approved on April 15, 2010 by the Supreme Court of Florida  for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

ID-MS-EWM 000015

ID-MS-EWM 000015

**XXIII. ATTORNEYS' FEES.** In any lawsuit brought to enforce the Lease or under applicable law, the party in whose favor a judgment or decree has been rendered may recover its reasonable court costs, including attorneys' fees, from the non-prevailing party.

**XXIV. MISCELLANEOUS.**

A. Time is of the essence of the performance of each party's obligations under the Lease.

B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.

C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.

D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.

E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.

F. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises is located.

G. Landlord and Tenant will use good faith in performing their obligations under the Lease.

H. As required by law, Landlord makes the following disclosure: "RADON GAS." Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**XXV. TENANT'S PERSONAL PROPERTY. TENANT MUST INITIAL IN THIS BOX ☐ FOR THE FOLLOWING PROVISION TO APPLY.** BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

The Lease has been executed by the parties on the dates indicated below.

X _Edward Pelew_
Landlord's Signature

X _11/6/18_
Date

_____
Landlord's Signature

_4/6/18_
Date

_____
Tenant's Signature

_4/6/18_
Date

_____
Tenant's Signature

_____
Date

This form was completed with the assistance of:

Name of Individual: PIER PAOLO VISCONTI
Name of Business: DOUGLAS ELLIMAN
Address:
Telephone Number:

**Copy of Current Version of Florida Residential Landlord and Tenant Act, Part II, Chapter 83, Florida Statutes to Be Attached**

Landlord _____ (_____) and Tenant _____ _____ acknowledge receipt of a copy of this page, which is Page 6 of 18.

RLAUCC-1x   Rev 7/16   Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar
Serial# 048018-200181-1234417

ID-MS-EWM 000015

ID-MS-EWM 000015

ID-MS-EWM 000016

ID-MS-EWM 000016



**Early Termination Fee/Liquidated Damages Addendum**

[✗] I agree, as provided in the rental agreement, to pay $ 3,000 (an amount that does not exceed two months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

[ ] I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law

X _Edward Below_      X _11/6/18_
Landlord's Signature      Date

Landlord's Signature      Date

Tenant's Signature      _11/6/18_ Date

Tenant's Signature      _11/6/18_ Date

AS A SUBSTANTIAL OBBLIGATION OF THIS LEASE, TENANTS SHALL GIVE LANDLORD A MINIMUM OF 60 (SIXTY) DAYS WRITTEN NOTICE PRIOR TO THE EXPIRATION OF THIS LEASE, OF ITS INTENTION TO VACATE THE PREMISES OR TO ENTER INTO A NEW LEASE. FAILURE TO DO SO SHALL RESULT IN ANY SECURITY BEING HELD BY LANDLORD, TO VEST IMMEDIATELY TO LANDLORD.

Land____ (___) and Tenant ____ (___) acknowledge receipt of a copy of this page, which is Page 7 of 18.

RLAUCC-1x   Rev 7/18   Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar

Serial # 808816-000161-1234417

ID-MS-EWM 000016

ID-MS-EWM 000016

ID-MS-EWM 000182                              ID-MS-EWM 000182

# Exhibit B

**Inelis Garcia**

| | |
|---|---|
| **From:** | Marcelo Steinmander |
| **Sent:** | Monday, September 30, 2019 3:15 PM |
| **To:** | EdwardP |
| **Subject:** | Notice \| 888 Biscayne Blvd #2712 |
| **Attachments:** | NOTICE.pdf |

Good afternoon,

A copy of this notice as prepared in coordination with the Law Offices of Alberto M. Cardet P.A will be presented to the Tenant (s) of 888 Biscayne Blvd #2712 today.

Best Regards,



## MARCELO STEINMANDER PA.
REALTOR®
Chairman's Club
Berkshire Hathaway HomeServices EWM Realty
M: 305.305.3885 | O: 305.674.4127
E: steinmander.m@ewm.com | themiamiobserver.com
419 Arthur Godfrey Rd, Miami Beach FL 33140
@MarceloSteinmander 

★ ★ ★ ★ ☆ CHECK OUT MY REVIEWS ON ZILLOW!



Reminder: Email is not secure or confidential. Electronic communication from Berkshire Hathaway HomeServices EWM Realty ('EWM Realty') or its Real Estate Associates regarding the transfer of funds will be in a secured format and must be verified verbally prior to initiating any transfer. If you receive an email concerning any transaction involving EWM, requesting that you send funds or provide non-public personal information, do not respond to the email and immediately call your Real Estate Associate or EWM Realty at 305.960.2600.

1

ID-MS-EWM 000182                              ID-MS-EWM 000182

ID-MS-EWM 000183                                                    ID-MS-EWM 000183

SEVEN (7) DAY NOTICE TO VACATE APARTMENT

NOTICE OF TERMINATION OF LEASE
(WITH NO OPPORTUNITY TO CURE)

To Steven F. Helfand, Walter F. Ellinwood

888 Biscayne Blvd #2712 Miami, FL 33132

 You are hereby notified that your Lease Agreement for 888 Biscayne Blvd #2712 Miami, FL
33132 is TERMINATED EFFECTIVE IMMEDIATELY.

This action is taken because:
You have continued to violate your lease agreement, Page 3 paragraph VIII , (see attached copy
of lease agreement) and Florida Statute 83.52 Specifically misuse of the landlord's and property
by intentional act or a unreasonable disturbance as to the enclose report dated September 24,
2019 regarding the computer theft,  in addition  on July 13, 2019 hot wire motorcycle enclose
violation notice on September 23, 2019 police was also dispatch to your unit  additional incident
report and unauthorize electrical repairs to electrical panel and plugs enclose are pictures of
September 16, 2019
DEMAND IS HEREBY MADE THAT YOU VACATE APARTMENT ON OCTOBER 9, 2019
OR BEFORE SEVEN (7) DAYS FROM THE DELIVERY OF THIS NOTICE.

I have been instructed to file suit immediately after this seven-day period if you do not
vacate as demanded.
This notice does not waive any other claims your landlord may have against you.

GOVERN YOURSELF ACCORDINGLY.

This instrument prepared by: Law Offices of Alberto M. Cardet P.A

Property Manager:  Marcelo Steinmander,
EJP 888 BISCAYNE BLVD 2712 LLC
1330 Coral Way Suite 301 Miami Fl 33145

I hereby certify that a copy of the notice has been furnished by the above-named tenant(s) on

September 30, 2019
(Date this Termination 7- day notice served upon tenant)

o   Personal delivery
o   Posting in a conspicuous place on the premises as tenant was absent from the above
    named residence.

Signed by person delivering/posting

ID-MS-EWM 000183                                                    ID-MS-EWM 000183

ID-MS-EWM 000136                     # Exhibit C                     ID-MS-EWM 000136

**Inelis Garcia**

| | |
|---|---|
| From: | Alejandro Hernandez <ahernandez@castlegroup.com> |
| Sent: | Thursday, October 31, 2019 12:29 PM |
| To: | Marcelo Steinmander |
| Cc: | Donald Campbell |
| Subject: | RE: Unit 2712 |

Hi Marcelo, Thank you for keeping us informed. However, we are not able to assist with the removal of any personal belongings inside the unit as this is a liability to the Association during an eviction. I am sure you understand. We can reserve the elevator for you at a time when you can have your team there to remove the tenant's belongings and they can be left for him in the loading dock where he can pick them up within the allotted 24 hour period provided him under the law.

Regards

**Alejandro Hernandez**
Administrative Assistant | Castle Group
Marina Blue "Proudly Managed by the Castle Group" 888 Biscayne Blvd. Suite 200, Miami, FL 33132
ahernandez@castlegroup.com | www.castlegroup.com
P: 305-808-7361 | C: | F: 305-808-7363



**From:** Marcelo Steinmander <steinmander.m@ewm.com>
**Sent:** Thursday, October 31, 2019 11:09 AM
**To:** Alejandro Hernandez <ahernandez@castlegroup.com>
**Cc:** Donald Campbell <dcampbell@castlegroup.com>
**Subject:** Re: Unit 2712

Hi Alejandro,

As per the phone call earlier:

The tenant/occupants of #2711 reached out to the attorney handling the eviction case and expressed her concern that the tenant in question may attempt to breach the building security and get back to the 27th floor using the emergency stairs. Furthermore, He also tried to communicate with our attorney in reference to the furniture inside the unit.

Lastly, please advise if aid can be provided in complying with the legalities of the eviction including removing the interior contents once unit is secured and placing them on the loading dock so a junk removal company hired by the owner may pick them up after the 24 hour period.

Thank you as always. I will be there tomorrow.

1

ID-MS-EWM 000136                                             ID-MS-EWM 000136

ID-MS-EWM 000232                                                ID-MS-EWM 000232

# Exhibit D

**Inelis Garcia**

**From:** Marcelo Steinmander
**Sent:** Thursday, November 21, 2019 3:07 PM
**To:** EdwardP
**Subject:** FW: Claim - 888 Biscayne Blvd #2712
**Attachments:** Claim.pdf



## MARCELO STEINMANDER PA.
REALTOR®
Chairman's Club
Berkshire Hathaway HomeServices EWM Realty

M: 305.305.3885 | O: 305.674.4127
E: marcelo@marcelosteinmander.com | themiamiobserver.com
419 Arthur Godfrey Rd, Miami Beach FL 33140
@MarceloSteinmander    

★ ★ ★ ★ CHECK OUT MY REVIEWS ON ZILLOW!



## BERKSHIRE HATHAWAY
HomeServices
EWM Realty

Reminder: Email is not secure or confidential. Electronic communication from Berkshire Hathaway HomeServices EWM Realty ('EWM Realty') or its Real Estate Associates regarding the transfer of funds will be in a secured format and must be verified verbally prior to initiating any transfer. If you receive an email concerning any transaction involving EWM, requesting that you send funds or provide non-public personal information, do not respond to the email and immediately call your Real Estate Associate or EWM Realty at 305.960.2500.

**From:** Marcelo Steinmander
**Sent:** Thursday, November 14, 2019 5:57 PM
**To:** EdwardP <edpeloso@gmail.com>; Alcardet@gmail.com
**Cc:** evictions@gmail.com; evictions@evictus.com
**Subject:** Claim - 888 Biscayne Blvd #2712

Good evening Ed,

Attached you will find a copy of the claim against the security deposit of Steven Helfand and Walter Ellingwood prepared as result of the conditions as found and presently at 888 Biscayne Blvd #2712, I tried to include as much as possible but just in case, Alberto is copied so that He may review before sending it over,

Best Regards,

ID-MS-EWM 000232                                                ID-MS-EWM 000232

ID-MS-EWM 000233 ID-MS-EWM 000233

**MARCELO STEINMANDER PA.**
REALTOR®
Chairman's Club
Berkshire Hathaway HomeServices EWM Realty

M: 305.305.3885 | O: 305.674.4127
E: marcelo@marcelosteinmander.com | themiamiobserver.com 
419 Arthur Godfrey Rd, Miami Beach FL 33140

@MarceloSteinmander 〇 f 🐦 in

★ ★ ★ ★ ☆ CHECK OUT MY REVIEWS ON ZILLOW!



**BERKSHIRE HATHAWAY**
HomeServices
**EWM Realty**

Reminder. Email is not secure or confidential. Electronic communication from Berkshire Hathaway HomeServices EWM Realty ("EWM Realty") or its Real Estate Associates regarding the transfer of funds will be in a secured format and must be verified verbally prior to initiating any transfer. If you receive an email concerning any transaction involving EWM, requesting that you send funds or provide non-public personal information, do not respond to the email and immediately call your Real Estate Associate or EWM Realty at 305.960.2600.

ID-MS-EWM 000233 ID-MS-EWM 000233

ID-MS-EWM 000234                                                  ID-MS-EWM 000234

November 14th, 2019

Tenant: Steven F. Helfand, Walter F. Ellingwood III

Current Address: 1400 SW 137th Ave #F112, Pembroke Pines FL 33027

888 Biscayne Blvd #2712, Miami FL 33132

### NOTICE OF CLAIM AGAINST SECURITY DEPOSIT

Rental Property Address:  888 Biscayne Blvd #2712, Miami FL 33132

Accept this as notice of my intention to impose a claim for damages in the amount of minimum costs of $10,000 upon your security deposit because of:

Damages to common areas and elevators of the building, including damages to the main hallway of the 27th floor.

Drywall repairs to bedroom walls, bedroom closets and kitchen.

Electrical repairs needed in outlets and electrical panel.

Damages to the appliances, including the refrigerator, cooktop, and microwave.

Damages found inside the unit and outside in the balconies caused by paint used by the Tenant.

Repainting of the entire interior of the unit.

A/C maintenance caused by not replacing the A/C filter.

Professional cleaning of unit and safe disposal of needles and other drug paraphernalia.

Replacement of light fixtures, ceiling lamps and furniture included as part of the Lease.

Additional expenses incurred as a result of the Tenants' actions that were charged to the Landlord

It is sent to you as required by §83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to my address at 1925 Brickell Ave #211, Miami FL 33129.

--------------------------------------------

EJP 888 Biscayne Blvd 2712 LLC

ID-MS-EWM 000234                                                  ID-MS-EWM 000234

ID-MS-EWM 000249

ID-MS-EWM 000249



# BERKSHIRE HATHAWAY
## HomeServices
## EWM Realty

Reminder: Email is not secure or confidential. Electronic communication from Berkshire Hathaway HomeServices EWM Realty ('EWM Realty') or its Real Estate Associates regarding the transfer of funds will be in a secured format and must be verified verbally prior to initiating any transfer. If you receive an email concerning any transaction involving EWM, requesting that you send funds or provide non-public personal information, do not respond to the email and immediately call your Real Estate Associate or EWM Realty at 305.960.2500.

ID-MS-EWM 000249

ID-MS-EWM 000249

ID-MS-EWM 000274

# Exhibit E

ID-MS-EWM 000274

**Inelis Garcia**

| | |
|---|---|
| **From:** | Marcelo Steinmander |
| **Sent:** | Tuesday, November 5, 2019 2:59 PM |
| **To:** | Alejandro Hernandez |
| **Subject:** | 2712 |

Alejandro,

Just a quick update regarding the pick up of the tenant's items at the loading dock. I tried to get them retrieved today but the junk removal company once again proved not reliable. They have assured that they would be there tomorrow between 11-1pm. Please let the loading dock know.

Please call me if anything



**MARCELO STEINMANDER PA.**
REALTOR®
Chairman's Club
Berkshire Hathaway HomeServices EWM Realty
M: 305.305.3885 | O: 305.674.4127
E: marcelo@marcelosteinmander.com | themiamiobserver.com
419 Arthur Godfrey Rd, Miami Beach FL 33140
@MarceloSteinmander 

★ ★ ★ ★ ★ CHECK OUT MY REVIEWS ON ZILLOW!



BERKSHIRE HATHAWAY
HomeServices

EWM Realty

Reminder. Email is not secure or confidential. Electronic communication from Berkshire Hathaway HomeServices EWM Realty ("EWM Realty") or its Real Estate Associates regarding the transfer of funds will be in a secured format and must be verified verbally prior to initiating any transfer. If you receive an email concerning any transaction involving EWM, requesting that you send funds or provide non-public personal information, do not respond to the email and immediately call your Real Estate Associate or EWM Realty at 305.960.2500.

ID-MS-EWM 000274
ID-MS-EWM 000274

ID-MS-EWM 000286                    Exhibit F                    ID-MS-EWM 000286

**Inelis Garcia**

| | |
|---|---|
| **From:** | Marcelo Steinmander |
| **Sent:** | Thursday, October 31, 2019 11:09 AM |
| **To:** | Alejandro Hernandez |
| **Cc:** | Donald Campbell |
| **Subject:** | Re: Unit 2712 |

Hi Alejandro,

As per the phone call earlier:

The tenant/occupants of #2711 reached out to the attorney handling the eviction case and expressed her concern that the tenant in question may attempt to breach the building security and get back to the 27th floor using the emergency stairs. Furthermore, He also tried to communicate with our attorney in reference to the furniture inside the unit.

Lastly, please advise if aid can be provided in complying with the legalities of the eviction including removing the interior contents once unit is secured and placing them on the loading dock so a junk removal company hired by the owner may pick them up after the 24 hour period.

Thank you as always. I will be there tomorrow.

Marcelo Steinmander

Marcelo Steinmander, PA
Berkshire Hathaway HomeServices
EWM Realty
Office: 305.674.4127
Cell: 305.305.3885
419 Arthur Godfrey Rd.
Miami Beach, Fl 33140
Steinmander.m@ewm.com
www.themiamiobserver.com

---

**From:** Alejandro Hernandez <ahernandez@castlegroup.com>
**Sent:** Thursday, October 31, 2019 10:08:03 AM
**To:** Marcelo Steinmander <steinmander.m@ewm.com>
**Cc:** Donald Campbell <dcampbell@castlegroup.com>
**Subject:** Unit 2712


Good Morning,

Hi Marcelo, the court served the papers for the eviction this morning and are coming back tomorrow to get everything out of the unit, we recommend to have a company to come and remove the items once they give the ok to do so.

Regards

ID-MS-EWM 000286                                        ID-MS-EWM 000286

ID-MS-EWM 000353

# Exhibit G

ID-MS-EWM 000353

**Inelis Garcia**

| | |
|---|---|
| **From:** | Anita Cachaldora |
| **Sent:** | Wednesday, November 6, 2019 8:34 AM |
| **To:** | Marcelo Steinmander; Nayla Benitez; Chris Basick; Denise Sicuso |
| **Subject:** | Steven Helfand EJP |

Good Morning, why I am copied on this email... and who is Steve?



**Anita D. Cachaldora**
Vice President
Berkshire Hathaway HomeServices EWM Realty

O: 305.960.2400 | E: cachaldora.a@ewm.com | www.ewm.com
550 South Dixie Highway, Coral Gables, Florida 33134

Reminder: Email is not secure or confidential. Electronic communication from Berkshire Hathaway HomeServices EWM Realty ('EWM Realty') or its Real Estate Associates regarding the transfer of funds will be in a secured format and must be verified verbally prior to initiating any transfer. If you receive an email concerning any transaction involving EWM, requesting that you send funds or provide non-public personal information, do not respond to the email and immediately call your Real Estate Associate or EWM Realty at 305.960.2900.

**From:** Steven Helfand <1400steven.helfand@gmail.com>
**Sent:** Wednesday, November 6, 2019 8:11 AM
**To:** Marcelo Steinmander <steinmander.m@ewm.com>; Nayla Benitez <benitez.n@ewm.com>; Anita Cachaldora <cachaldoraa@ewm.com>; Chris Basick <basick.c@ewm.com>; Denise Sicuso <sicuso.d@ewm.com>
**Subject:** Fwd: Steven Helfand EJP

Please take notice of the below.  EWM shall be a named party.

---------- Forwarded message ----------
**From:** Steven Helfand <1400steven.helfand@gmail.com>
**Date:** Wednesday, November 6, 2019
**Subject:** Steven Helfand EJP
**To:** "Steinmander.m@ewm.com" <Steinmander.m@ewm.com>
**Cc:** "Alcardet@gmail.com" <Alcardet@gmail.com>

Marcello:

This confirms my telephone call to you earlier this morning in which you indicated you were relying on your attorney, al Cardet,  to handle all matters on your account and accord with regard to all matters arising or relating to me. You hung up on me shortly After relating this information to me and after I told you that I had left multiple voicemail messages for the attorney,  sent an email and a certified letter to Mr. Cardet, for which none of which had received the courtesy of any response.  I advised you that I would be filing a lawsuit on Friday and you shall be a named party.

I also reached out to Ed afterwards and he hung up on me too. I called back in to his line and expressed my disappointment that he was not able to handle the courtesy of a simple conversation with me especially regarding the fact that he has converted my personal property along with you and your attorney and his agents are all non responsive. Please send a copy of this email to Ed.  This sort of weasel approach is akin to an ostrich with its head in the sand.  You people have stolen property of mine.  There is no excuse for this outrageous conduct. No excuse is acceptable.  The property was never abandoned.

ID-MS-EWM 000353

ID-MS-EWM 000353